MOSES W. S. JACKSON (by his Guardian), Appellant, *v.* ANNA MARGARET JACKSON and others, Respondents.

It is essential to the due execution of a will, under the laws of this State, that the witnesses, who are to attest the subscription and publication thereof by the testator, should sign the same, after the subscription by him.

In respect to the subscription by the testator in the presence of the witnesses, and his declaration, that the instrument is his last will and testament, which the statute requires to be simultaneous, it is sufficient that they be on the same occasion, and it is not material, that the declaration immediately precedes the subscription.

Where the subscription by the testator is by his mark, it is the *mark*, and not the name which may be written around it by another, which constitutes subscription by the testator. Hence, it is immaterial whether such name is written before or after the mark is made.

The writing of the testator's name, with the words "his mark," done by a third person, to identify the testator's subscription by a mark, is not the "signing of the testator's name by his direction," as a subscription of the will, which the statute contemplates, in prescribing the requisites to due execution.

The attestation clause is no part of the execution of the will, and its form is not essential. As a memorandum of facts, then transpiring, it is very useful, and, on the death of the witnesses, it may be *prima facie* evidence, that the formalities, which it recites, were enacted, but it is not indispensable.

The circumstance, that the testator died within a few hours after the making of his will, does not alone warrant an inference of incapacity.

And the fact, that the testator, by his will, gives his whole estate, amounting to $30,000, to a second wife, except the small sum of $500, which he gives to his only child (his son by his first wife), however it may seem unreasonable or unjust, is not alone sufficient to establish an allegation, that the will was executed under undue influence.

APPEAL from judgment of Supreme Court in General Term (first district), affirming decree of surrogate, admitting to probate the will of Moses W. S. Jackson, and establishing it as a will of real and personal estate.

The testator for some twelve years prior to his decease, and at the time of his death, resided in New Jersey, where he died.

On the morning of the day on which he died, he sent for Mr. Miller, a justice of the peace, residing in the neighbor

hood, and instructed him to prepare his will; and the instrument established as his will was then prepared and executed. Therein the testator bequeathed $500 to the appellant, his only child, and the residue of his estate, real and personal, he gives to his wife, the respondent Anna Margaret. It was admitted by the respondents, in their answer to the petition of appeal, that such real and personal estate amounts in value to about $30,000. The mother of the appellant had, prior to the testator's removal to New Jersey, obtained from him a divorce in this State. The answer to the petition of appeal states, that he, notwithstanding, married the respondent Anna Margaret in New Jersey, and they lived together as man and wife until his death. Though it was not the subject of distinct proof, the language of the petition of appeal seems to indicate that such former wife had died before the time of the making of such will.

When Mr. Miller reached the house on the morning referred to, the testator stated to him, that he " wanted to get married," and said " he wanted to make his will." He then gave instructions how he wanted his will made. Miller went to his residence for writing materials, returned, and then performed the marriage ceremony, Mrs. Jackson objecting that she did not think it necessary, because she had been married to him before. The testator, however, insisting, the ceremony was performed.

The will was drawn in conformity with the detailed oral directions given to Mr. Miller by the testator. First he said, " I give all my property to my wife." On Miller saying, " You have got property in New York," he added, " Well, my property here and my property in the State of New York, I give to my wife Anna M. Jackson,— that is, the real estate ; " and, in answer to the inquiry, " You have personal property, how do you wish to dispose of that ? " he answered, " I give all my personal property of every kind and description to her sole use and benefit." Being inquired of further by Miller, " What after her death ? " he said, " Let her manage that herself." These instructions were testified to by Miller ; and he subsequently stated, that the testator mentioned his

son, the appellant, "that he should be left $500, I think." Apart from these details, it was testified by Miller that he drew the will and gave it to the testator to examine.

The testator said, "One thing at a time — I won't sign that until I sign the certificate." The magistrate prepared and signed the marriage certificate, and the testator signed it.

The execution of the will then took place, the particulars of which are stated in the opinion.

It appeared by the oral testimony, that the will had been proved in New Jersey.

Its probate here was contested by the appellant, the son of the testator, by his guardian.

The will was admitted to probate by the surrogate of New York. The contestant appealed to the Supreme Court. The General Term in the first district affirmed the decree, without costs, and the contestant appealed to this court.

*Wm. H. Taggard,* for the appellant.

*W. L. Cowdrey,* for the respondent.

WOODRUFF, J. The due execution and validity of a will devising real estate, situated in this State, are open to inquiry here, notwithstanding the probate in New Jersey, where the testator resided. The appellant insists that the judgment herein should be reversed on two grounds: first, that the instrument admitted to probate as a will was not legally executed, either by the laws of New York or New Jersey; second, that the testator was not of sound mind and memory at the time of the alleged execution; and, in this connection, the appellant insists that a presumption is warranted that the will was executed under undue influence.

There is not the slightest affirmative or direct evidence that the testator was not, at the time when he gave the instructions to the magistrate, and when he executed the will, in the full possession of his mental faculties, and in their ordinary exercise. He was very sick, he was apparently aware that he had not long to live, but all the testimony to

what transpired on the morning in question indicates that he was fully aware of the nature of the business in which he was engaged, and of the relation in which he stood to his wife and family.  Whatever view he entertained of the relative position of himself and wife prior to that day, he manifested a primary wish to place her in the clear relation of wife, by the new performance of the ceremony of marriage; showing, at the same time, that he deemed this of even greater importance than any pecuniary provision for her benefit.  His instructions to the magistrate were also given in a manner indicating a full comprehension of the subject, and a conscious will of his own in making the dispositions which he directed.

There is no counter evidence.  No witness states, and no circumstance proved shows, any mental weakness; on the contrary, the witnesses, including the brother of the testator, who did not see him until some hours after the will was executed, agree in the unqualified opinion that his mind was sound and clear.  Besides the fact that he was very ill and died about five or six o'clock in the afternoon, there is nothing to throw doubt upon the testator's capacity, and, surely, that is not alone sufficient.  If that would warrant such a doubt, it is wholly overcome by the affirmative testimony.

There is as little warrant for the claim, that the will was executed under undue influence.  In the first place, the proof shows, in a manner quite convincing, that the will was his own voluntary act.  And there is no rebutting testimony. Nothing in the case indicates that the subject of making a will, or any of its dispositions, was suggested to him in any form, directly or indirectly, and unless the mere fact that he gave nearly all his estate to his wife, and only $500 to his only child, is of itself sufficient proof of undue influence to defeat the will, this point utterly fails.

I recognize the weight of authority found in the cases relied on by the appellant, on the subject of undue influence, and the call upon the court for jealous scrutiny where the dispositions made by a testator in moments of great physical

weakness, are extraordinary, and especially when they indi-cate an insensibility to the dictates of natural affection, and what are ordinarily recognized as the claims of children, or other near relatives, and still more so, if those dispositions are in favor of unworthy objects.

But, where the evidence of mental capacity is satisfactory, where there is an entire absence of proof of any interference with the free exercise of a disposing mind, the circumstance, that the court do not perceive the reasons which led him so largely to prefer his wife in the disposal of his property, is not alone sufficient to establish that his will was not his free and voluntary act. Whether he had some prejudice against his son, then fourteen years of age, and, perhaps, able to support himself, whether he estimated his obligations to his wife at a higher rate than usual, or whether, in reviewing their previous history, he even erroneously considered her entitled to his largest benefactions, we cannot know. But we are bound to say, in the language of the opinion in this court, in *Clapp* v. *Fullerton* (34 N. Y. 197), "The right of a testator to dispose of his estate depends neither on the jus-tice of his prejudices, nor the soundness of his reasoning. He may do what he will with his own; and if there be no defect of testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust."

2. Was there sufficient proof of the due execution of the will?

The testimony establishes that the testator gave to the magistrate, Miller, specific instructions detailing the pro-visions of the will. The will conforms to those instructions — it was given to him for examination. He insisted that he would not sign it until he had signed the marriage certificate. This was done. He requested the magistrate to get wit-nesses. He procured them, viz., Dr. Fisher and Mr. Davis, Miller himself being present all the time. Dr. Fisher came in first, and the testator "requested him to sign it;" and, in the presence of Dr. Fisher and the magistrate, Miller (two of the witnesses to the will), the testator took the pen in

his hand for the purpose of signing his name. His hand trembled; and, as Miller states it, "he found out, after trying some time, that he could not write his name, and said he would make his cross," and he did so, and then "acknowledged it to be his last will and testament;" and the magistrate wrote the words "Moses W. S. Jackson, his mark," which appears around the cross, "with the same pen and at the same time." Whether immediately before the cross was made by the testator or immediately after, does not very distinctly appear. Miller and Dr. Fisher signed their names as witnesses. The testator requested each of them to do so. According to Miller's testimony, before the testator made his mark, "the witnesses signed it and he made his mark." Ques. "Did he make his cross before or after they signed it?" Ans. "Afterward."

Shortly after Mr. Davis, the third witness, came in, and Miller, the testator, requested him to sign it, as a witness to his last will and testament, and acknowledged it as his last will and testament, and Davis thereupon signed it as such witness.

I am not able to discover any defect in the execution of the will, on the part of the testator, either under the law of New Jersey, cited by the appellant, or under our own.

The mark made by the testator as and for a subscription is a "subscription by the testator at the end of the will." It was made in the presence of two attesting witnesses, "both present *at the same time.*" It was acknowledged by the testator to a third attesting witness, which seems to have been unnecessary (as the law is quoted) in New Jersey as well as here. The testator, at the time of signing, and at the time of acknowledging, declared the instrument to be his last will and testament. The witnesses were each requested to sign the will, and did so at the end thereof.

The testimony of Miller, by whom the facts I have detailed are chiefly proved, is not very orderly and clear, but there is nothing to suggest doubt of his truthfulness, and he is corroborated, to some extent, by others. Taking all the evidence together, I deem the facts proved as above stated.

The circumstance that the attestation clause does not recite all the details is of no importance.   As a memorandum of what occurred, and as a means of securing the attention of the witnesses to the fact that all required formalities have been observed, it is very desirable that it should be full and precise in its details.   Sometimes, when the witnesses are dead, it may be of great importance as presumptive evidence of due execution.   But the attestation clause is no part of the will, and is not required as a part of its due execution by any law. (*Chaffee* v. *Baptist Miss. Ass.,* 10 Paige, 85 ; *Leaycraft* v. *Simmons,* 3 Bradf. 35 ; *Jackson* v. *Christman,* 4 Wend. 282.)

So, in regard to the suggestion that the words " Moses W. S. Jackson, his mark," were written by the witness, Miller, by whom the will was drawn, and no proof of a distinct direction to him by the testator to write them was given ; and that they appear to have been written after the testator made his mark.   If it was material it would suffice to say that the transaction was one ; the acts were simultaneous as nearly as practicable.   The order of several things constituting one complete execution, by the testator, is not material if they are, in fact, done as nearly as may be at the same time.   Thus the statute requires that the testator, " at the time of making such subscription,    *    *    shall declare the instrument    *    *    to be his last will and testament."   But this does not make it necessary that the declaration shall be uttered while in the very act of writing.   It may be immediately before or immediately after; it is enough if it be on the same occasion and forms part of the one transaction. (*Secor* v. *Lewis,* 13 Barb. 25 ; *Doe* v. *Roe,* 2 id. 205 ; *Seguine* v. *Seguine,* id. 394, 5 ; *Kenney* v. *Whitmarsh,* 16 id. 145.)

Besides, it is an error to regard the writing of the words in question, as the " signing the testator's name by his direction," referred to by the statute.   The testator may subscribe the will by his full name or by his mark, and if he does so. *that* is the subscription required by the statute.   And it would be effectual as such even though no one made the written memorandum thereof around such mark.   Such memorandum

is useful and important, not only as a guide to the memory of witnesses, and a cotemporaneous declaration of the purpose of the mark, and that it was made by the testator, but as a protection against fraud; but it is not of the essence of the execution. When it is necessary to prove the execution of an instrument by a " marksman," the proof is evidence of the *making of the mark;* the writing of the name around it is no essential part of the evidence. (*Jackson* v. *Van Duzen,* 5 J. 144; *Addy* v. *Grix,* 8 Ves. 504; *Butler* v. *Benson,* 1 Barb. S. C. 533; *Chaffee* v. *Baptist Association,* 10 Paige, 91.) It follows that whether the testator expressly directed such memorandum to be made or not, is wholly immaterial, though upon the whole case it seems to me that such direction was substantially imported in what occurred. And whether the memorandum was made before or after the making of the mark is also unimportant. (1 Jarman on Wills, 101.)

The question, whether if the witnesses sign their names before the will is subscribed by the testator, has come under consideration in England under the statute of 1st Victoria (ch. 26, § 9), which differs but little in its provisions touching the execution of wills from our own. Thus: " It shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

So far as the words of the statutes bear upon this question, I do not perceive that there is any material difference between the English statute and our own. Both require subscription or signing by the testator, or an acknowledgment thereof by him in the presence of each of the witnesses; both contemplate the attestation of that fact by such witnesses by their subscription.

On several *ex parte* applications for probate of wills in the Prerogative Court of Canterbury, such probate has been

refused where it appeared that the witnesses signed before the testator, and in one of the cases the testator first read the will aloud in their presence, then requested them to sign, and, they having done so, he immediately signed it in their presence. In one case the question of probate was discussed by counsel, and the rule was affirmed, though the will was admitted on the ground that it did not appear upon a review of all the evidence that the witnesses signed before the testator.

And in some cases where the testator signed in the presence of one witness, who also signed, and afterward the testator acknowledged the execution to both, but the first did not again sign, — the execution was held defective. (See *In the Goods of Olding*, 2 Curteis, 865; *In the Goods of Bird*, 3 id. 117; *Cooper* v. *Procket*, id. 648; *In the Goods of Allen*, 2 id. 331; *In the Goods of Simmonds*, 3 id. 79; *Moore* v. *King*, id. 243.)

Our statute on this precise point reads: "There shall be, at least, two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."

They are, in and by this act of signing their names, to attest, not only the signing or acknowledgment, but his *cotemporaneous* declaration that it is his will. Their *signatures* do not attest the signing by the testator, if they are placed there before the will is signed by him. For some period, longer or shorter, as the case may be, those signatures attest no execution — they certify what is not true.

When, and in what moment, do they begin to operate as a compliance with the statute? The only reply that can be given is, when the testator signs his name.

This is a dangerous construction of the statute. May the testator keep these signatures in his possession one hour, one week or one year, and then add his signature? Certainly not, unless he summons the same persons to see him sign, or hear his acknowledgment thereof.

But, suppose he adds his signature and dies, what then becomes of the presumption of due execution, arising from

the apparent regularity and the due form of the attestation clause? Once let it be settled that witnesses may sign before the testator, and all presumption of due execution, when witnesses are dead or beyond reach, ceases.

If it be said, that witnesses will not sign, and so leave their names in the possession of a testator; to suppose they would, is to impeach their honesty; and it is the presumption of men's truth and honesty which makes regularity and formal attestation *prima facie* evidence of due execution.

I do not think this a sufficient answer. The statute contemplates acts, each of which are serious and important. Execution and the attestation thereof bear a plain relation to each other in point of time, in the good sense and common apprehension of every one, and the statute prescribing the requisite formalities to a valid execution and authentication, plainly contemplates that the acts of the witnesses shall attest the signing and declaration of the testator as a fact accomplished.

I was at first inclined to think that if the whole was done at the same interview, the attestation by the signing of the witnesses might be done in any part of it without regard to the order of events; as above suggested, the acts of the testator may be, but, upon further reflection, I am satisfied that the view taken of the subject by the ecclesiastical court in England, best conforms to the language and intent of the statute. The signing or acknowledgment by the testator, and his declaration that the instrument is his last will and testament, are in the statute made cotemporaneous, and neither must necessarially precede the other, and yet, in practice, this must be construed to mean on the same occasion, each as parts of the same transaction, and not requiring that the words of declaration should actually accompany the movement of the pen in signing, or be actually embraced in the terms of acknowledgment of such signing. Practically, which utterance is first is of no possible importance.

The attestation by witnesses is of a past transaction, it is so in its nature, and so in the ordering, and, I think, the meaning of the statute.

This distinction, if it served no useful purpose, if the contrary was liable to no danger, nor led to any abuse, might be deemed a too strict adherence to the literal interpretation of the law. But reasons I have suggested already, I think, show that a strict adherence to the statute is demanded.

· Upon the ground, that, according to the testimony as it appears in the case before us, the witnesses signed before the testator, the judgment of the Supreme Court should be reversed.

There is, perhaps, reason to apprehend, from the somewhat disconnected and not always quite definite and intelligible manner of the witness, that he may not have intended to be understood as saying that the witnesses signed first, and yet his testimony so reads. If there is any mistake on that point, it will be corrected on the trial, which the reversal of the judgment of the Supreme Court will render necessary.

As to the question raised by the appellant, whether the witnesses examined before the surrogate were competent to testify, two of them being named as executors, it must suffice to say that no such objection was there raised, they were examined without objection, and such objection, if it have any force, cannot be first raised here.

The absence of the third witness, Dr. Fisher, was sufficiently accounted for, and the will could be established without his testimony, where the contestant did not expressly require his examination, even if the proof had not shown *prima facie* that he was out of the State. (Laws of 1837, ch 460, §§ 10, 11; *Caw* v. *Robertson*, 5 N. Y. 128, 129.)

But, on the ground above stated, the judgment must be reversed.

Reversed, and a new trial ordered, without costs on appeal.