The Surrogate.
The subscribing witnesses, by their 'testimony, show that the requirements of the statute were complied with in so far as the signing of the alleged will by the decedent, the publication, and the request to them to sign as witnesses, are concerned, and although an attempt was made to show the decedent incompetent, it was unsuccessful. The only question, therefore, to be considered, is whether the signatures of the subscribing witnesses are so placed as to meet the requirements of the statute. The statute, which has remained unaltered since the revision of 1830, requires that the will shall be subscribed by the testator at the end thereof, and there shall be at least two subscribing witnesses, each of whom shall sign his name as a witness at the end of the will.
Doubtless, every one has the same natural right to direct what disposition shall be made of his property after his death, that he has to dispose of it while living. This natural right was recognized at a very early age of the world, and has been practiced from time immemorial,* at first unrestricted, but in consequence of force, fraud and imposition employed toward the., weak and dying, it became necessary to guard and protect persons in the exercise of this natural right, by legislative enactments. These laws, passed from time to time, *215 both here and in England, became more and more stringent and technical in their provisions, according as observation developed the necessity, until the adoption of our present statute in 1830, and the act of parliament 1 Vic., ch. 26), in 1837 in England. Our statute, it will be seen, has remained intact for upwards of forty years, and, while our courts have generally adhered to a strict and literal construction of its provisions, no modification of it has, that I am aware of, ever been attempted ; a sufficient evidence, one would suppose, of the beneficence of its requirements, as well as of approval of its strict construction by the courts.
The mode of execution of wills as prescribed in our statute and the act of parliament (1 Vic.), is identical in respect to signatures, except that while ours provides that the testator shall sign “at the end of the will,” the English act provides that he shall sign “at the foot or end of the willand also that here the witnesses must each sign at the end of the will, the English statute, while requiring two witnesses to be present at the time, is silent as to where they shall sign.
In England, under the statute (1 Vic.), the ecclesiastical courts adopted such a construction of the words “at the foot or end thereof,” by requiring that the signature of the testator should immediately follow the written words of the will, so that no space should remain whereon anything more could be written, that it was deemed necessary to pass an additional statute defining the import of these words more carefully. Hence the act (15 and 16 Vic., ch. 24, 1852-’3), commonly called “ St. Leonards’ Act,” which provides that the signature of the testator shall be valid “if so placed at, or after, or following, or under, or beside, or opposite to the end of the will, that it shall be apparent on the face of the will that the testator intended to give effect, by such his signature, to the writing signed as his will,” “ and that no such will shall be affected by *216 the circumstance that the signature shall be on a side, or page, or other portion of the paper or papers containing the will, whereon no clause, or paragraph, or disposing part of the will shall be written above the signature.”
Several decisions have been made under this defining act; one (In re Hammond, 9 Jur. N. S., 581), rejecting a codicil; another (Hunt v. Hunt, Law Rep., P. & D., 209), where a will ended in the middle of the third page, and, the lower half of this page remaining blank, the attestation clause and the signatures of the testator and the witnesses were at the top of the fourth page, and it was held a sufficient execution. And so, where the will-filled the first and third pages of a sheet of paper, and the • signatures were written crosswise on the second page, it was held sufficient (Cooms, In re, Law Rep., P. & D., 302).
These decisions are all, doubtless, correct under the defining statute above quoted. In the absence, however, of any such statute in this State, we are compelled to regard the decisions of our own courts in analogous cases, and to construe our statute so as to give effect to the intent and meaning of it, as gathered from the language used, and the causes which gave it origin.
In the goods of Baker (Prerog. Ct., 1844, 3 Notes of Cases, 162), decided under the statute 1 Vic., the will was written on paper folded in the middle, so as to make four pages (foolscap), and it began on the first page and was continued and concluded on the third page, on which there was no signature, although there was room for the name of the testator, but not for the attestation clause, which was written on the lower part of the second (otherwise blank) page, and underneath it were the signatures of the testator and witnesses. The learned Sir H. Jenner Fust admitted the will to probate. The testator and witnesses all concurred as to the end, in that case. Here, however, their names *217 are more than the distance of a page apart (McGuire v. Kerr, infra). That court subsequently adopted a more stringent rule of construction, under which probate would have been refused.
In the goods of Gore (3 Curteis, 759), was decided in 1843, rinder the same statute, and, it seems to me, determines a different question than the one under discussion, but which might properly give rise to some consideration. In that case, the will occupied the entire side of the first page of a sheet of paper (doubtless, “foolscap”), closing with the words: “I have hereunto set my hand and seal.” The second side was left blank, and on the third side was a full attestation clause, and at the foot or end thereof were the signatures of the testator and the subscribing witnesses. Sir Herbert Jenner Fust concludes his brief opinion by saying: “It cannot be said to be signed at the foot, but it may be said to be signed at" the end” It appears to me that all that is substantially decided, is that the intervention of a blank page will not invalidate a will, where the will purports to dispose of the whole estate. It is a matter of much doubt whether our courts can properly sanction such wills, when it is considered that the great object of our statute is to guard against fraud, and when so wide a door is left open for' its perpetration, as is done by leaving a blank page intervening in the midst of the disposing parts of a will. Indeed, in later cases in England, the same learned judge, with the concurrence of the judicial committee of the privy council, has felt it necessary to take a more rigid view of the enactment in question, even where there was no intention to evade the law, but on the contrary, where the testator was anxious to comply with the requirements of the statute (Willis v. Low, 5 Notes of Cases, 428 ; Smee v. Bryer, 6 Id., 20 ; affirmed in privy council, 1848). If the blank page had had a line or lines drawn lengthwise across it, the objection *218 would have been obviated. Careful conveyancers almost invariably adopt that mode of marking blank spaces. ■ As the question, however, has not been raised in this case, it has received little consideration, and is not passed upon.
The case in 1 Tucker, 286, but follows that in 3 Curteis above referred to, in so far as the signing by the testator at the foot of the attestation clause is concerned.
Verplanck, Senator, in Remsen v. Brinckerhoff (26 Wend., 325), which is the leading case under our statute, says : “ The requirements of the statute are the prescribed rules for the evidence, pronounced by law to be indispensably necessary to prove the disposing mind and will of the testator, and the authenticity of the testament; both of these being subjects peculiarly open to imposition, artifice and error. The law therefore prescribes, amongst other things, that the will shall be subscribed by the testator at the end of the will, and there shall be at least two subscribing witness, each of whom shall sign his name as a witness at the end of the will. The rule is strict in regard to the place where the testator and witnesses shall sign, prescribed by precautionary policy for the government of those who alone can give legal effect' to the testament.”
The presumption is that the statute, by using the word “ end,” means to give it its usual signification—■ termination. In order to reach the termination, or end of a written document, we must turn over the leaves, on which it was written, in the ordinary and usual way. We have no right, arbitrarily, to use an extraordinary method to reach a point in the middle of the document, which was- designed, through ignorance or error, to be the end. Such a course would be, in effect, for the court to legislate, as parliament did in the defining act referred to.
*219 The learned surrogate, In the case of McGuire v. Kerr (2 Bradf., 244), held that the statute meant that the testator and witnesses should all agree, by the act of placing their names doubtless, as to what is the “ end. of the will.” Here they did not so concur. The testator signed at the foot of the third page, and the witnesses signed on the second page. A will has its beginning and end—both local. Surely, there cannot be two ends ; one on the third page, and the other in the midst, Ideally between the first and third pages.
It is claimed that the courts, in the absence of all appearance of fraud, such as this case presents, have considered whether the admission ,or rejection of the will would accomplish or defeat the intent and meaning of the statute, and have invariably acted accordingly. It certainly cannot be claimed that a will, however honestly intended to have been properly executed, and however free from any suspicion of fraud, where the witnesses signed before the testator subscribed it, should be admitted to probate (Jackson v. Jackson, 39 N. Y., 153); nor that one with like surroundings, subscribed by the testator and signed by the witnesses upon the margin of the second of three written pages, could be recognized by any court as a valid will. In Hoysradt v. Kingman (22 N. Y., 372), the court says : “ Under the statute of frauds, it had been held that the name of the testator, written by himself, occurring in any part of the instrument, was a sufficient signing. Our modern statute- is careful to change this rule by requiring the subscription to be made at the end of the will;” and it requires the witnesses to sign at the same place.
I cannot resist the conclusion that the will in question has not been signed by the witnesses at the end thereof, and it must, therefore, be refused probate.

 But see Maine's Ancient Law, ch. 6.