Deas v. Wandell.

---

DEAS, appellant, v. WANDELL *et al.*

*Will — mental capacity — undue influence.*

A testatrix had been separated from and on unfriendly terms with her husband over thirty years, and had for a long time been at enmity with her aunts, who were her next of kin, because her mother's will was in favor of such aunts and gave her nothing. *Held,* that the circumstance that testatrix's will gave all the property to persons not related to her would not raise an inference of want of mental capacity, or of undue influence.

APPEAL from a decree of the surrogate of the county of New York, admitting to probate the last will and testament, and codicil thereto, of Jane Ann Fowler, deceased.

By the will and codicil, the testatrix devised the bulk of her property to persons not related to her in blood. The probate was contested by her husband and her aunts, as next of kin, upon the ground of undue influence exercised by some of the legatees, fraud, the unnatural tenor and effect of the will, and mental incapacity. The material facts, not above stated, appear in the opinion.

*Charles Matthews,* for appellant.

*Homer A. Nelson,* for respondent.

Deas v. Wandell.

DONOHUE, J. This is an appeal from the surrogate's decree admitting the will of Jane Ann Fowler to probate. The contestants are her husband, with whom she lived but a short time and from whom she was separated nearly thirty years; she even assumed the name previously held by her, and her references to him afterward were never affectionate; the other contestants are relatives with whom it appears bad feeling existed in consequence of the will made by her mother giving the mother's property to the deceased's aunts when, as a daughter, she had reason to expect it herself. The parties thus situated are the ones who now attack the will on the grounds, substantially, that the testatrix was of unsound mind, and that undue influence was used. In looking at this case under the authorities (*Jackson* v. *Jackson*, 39 N. Y. 153; *Clapp* v. *Fullerton*, 34 id. 197), the rule in regard to both these questions is clear. It will be seen that no one contests the will except those who show no real reason to be surprised at its contents. Had the husband been provided for it would have been a strong evidence either of her insanity for thirty years before her death or the insanity of its provisions. No single fact in the evidence would warrant an expectation of his being a devisee. The other contestants might really have been somewhat surprised if the will had provided for them. The mother's gift to them, forgetting her own daughter, had raised an amount of feeling in the deceased that led her to the use of abusive language to them at all times, and one of them had gone so far as to call her crazy. So far, therefore, as the character of the disposition of the property is concerned there is nothing in the circumstances to impress it as one made by a person wanting mental capacity, or on whom undue influence had been used. Her mother's property had been by will left from her; it is hard to see why those who had thus obtained it or their friends could expect much from her.

In the case there is, so far as all the legatees are concerned, an absence of any influence whatever, except it may be said in the one devise to Wandell, her counsel, and if those who would be benefited by holding this void had objected, evidence might be required to sustain it. It might, if attacked, want support (*Nesbitt* v. *Lockman*, 34 N. Y. 167), but as it is not attacked by those to whom its avoidance would be a benefit, we do not consider that.

The evidence of the alleged want of capacity is not only slight, but may be said to be all wanting. The deceased, up to her death,

attended to her own business and in the letting of her houses, in receiving and paying her debts, and in all her business relations so acted as to give no ground to charge her with a want of capacity. Some few things in a long life are referred to, and on them an attept made to found a theory of insanity. It is said she misrepresented, in a letter to her mother, the conduct on a particular occasion of an old servant, when in substance the servant admitted the material part — that she did press her conversation on her old mistress. It is said she stated she had had a child by her husband, which had died, and which was not true. Whether she ever did really think or say so, now that she is dead, it is hard to prove; but if she did say it, how she came to say it, whether intentionally to falsify or supposing it correct, or with what object, cannot be told. Again, it is said she made a serious charge to one person about her fears of poison from another; that one night she had a dispute about some matter with a person in her house and late at night wanted to put them out. There is nothing in the case in connection with either of these circumstances to found any doubt of her sanity. The testimony of an expert who never saw her is put in, but, under the circumstances and against the testimony, is of no weight. Again, it is said a paper found in her will disproves the will to be her intent. We think that not only is this not so, but the opposite the fact. Her own handwriting in this paper, kept with the will, shows a knowledge of the will, and attempts to give intelligence where its devisees may be found. All her letters put in show no want of soundness in her mental condition, but the reverse.

That she was passionate, bore malice, whether right or wrong, and felt animosity to those related to her who would have been her heirs at law, is true ; but that any thing she said or did amounted to evidence of mental incapacity is equally untrue. Whether she made the will her husband or her aunts would have made, or that any other person would have made, is not the question. The law gives her the right to dispose of her own property, and this power is given with a full knowledge of human temper and judgment.

The surrogate was correct in his judgment, and the decree should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

*Decree affirmed.*