NEW YORK COUNTY.— HON. D. C. CALVIN, SURROGATE.—MAY, 1876.

## BURK'S WILL.

*In the matter of the Probate of the last Will and Testament of* ELLEN BURKE, *deceased.*

The publication on the part of a testator need not be in express words. It is sufficiently shown by evidence that in the hearing of both witnesses, the testatrix asked the witness to draw her last will and testament, and when he had done so, and had read it aloud to her, she approved and signed it.

To constitute undue influence which will invalidate a testamentary act, there must be the control of another will, over that of the testator.

The fact that there is no attesting clause to a will does not affect its validity.

Where the testatrix insisted on inserting in her will bequests to the drafts-man's children, notwithstanding his suggestion that they had no claim, and made no provision for her husband, and none for her own son until asked by a by-stander if she would not,—*Held*, that as she had long been separated from her husband, and her son had been long absent and unheard from, the circumstances did not show impaired mind and subjection to undue influence.

THE contestants objected to the probate, particularly because;—1. Of alleged undue influence exercised by the two subscribing witnesses to the will; 2. The incapacity of the testatrix; and 3. The following defects urged in respect to the mode of execution. *First :* That the testatrix did not subscribe the will. *Second :* That she did not declare it to be her will. *Third :* That she did not request the witnesses to subscribe their names as such.

As evidence of want of capacity, the proof showed, that the testatrix was suffering from the effects of poison which affected her throat, and rendered her speech somewhat difficult to be understood, and that the poison affected her eyelids, so as to prevent her from keeping her eyes open.

It was also alleged on the part of the contestants, that certain bequests to the children of the two subscribing witnesses, should excite suspicion as to the undue influence exercised by them over her mind, during the period of her final illness.

It was also urged that the terms of the will should excite a like suspicion.

The proof showed that, apprehending that she was about to die, the testatrix sent Mrs. Cusick, an attendant upon her, to Mr. Dillon, the other subscribing witness, to come and fix up her affairs.

That Mr. Dillon called at such request, and was told by her that she wanted him to settle her affairs. He objected, and suggested the procuring of a lawyer,

but she declined, and said; " We can fix it. " Writing materials were procured, and he wrote down, as she said, and under her directions; that is, he wrote each clause of the will and read it over to her, and she said it was right.

That after he had written it in full, he read it to her again; that he did'nt think she could write, and that in signing the instrument she held the pen, he holding her hand, signing the name.

Dillon testified that after she had signed the instrument, she did not state what the instrument was, but asked Mrs. Cusick, and himself, to sign it, which they did, in the presence of the testatrix, and of each other, that after he had written the residuary clause of the will, Mrs. Cusick asked her if she wasn't going to do something for her, testatrix's, son Johnny—that she hesitated awhile, then suggested that she would give him $450, but prior to that the testatrix had not suggested his name.

It appeared also that the testatrix had a husband living, but that they had been separated for several years.

Dillon also testified that the testatrix seemed to be in a good deal of distress; that she had difficulty in keeping her eyes open, and that her eyelids had to be held open, to enable her to see, but that she was in strong physical health, and clear in her understanding, and that when the instrument was executed, he was not aware that the law required any declaration that the instrument was her last will and testament.

The testimony of Mrs. Cusick, the other subscribing witness, agreed substantially with the testimony of Dillon above recited, except that she testified that the testatrix asked Dillon to write her will for her, and when he had gotten through with writing the will, she said that would do.

Both witnesses testified that when the testatrix requested Dillon to write the bequest to his children, Dillon objected, and said he had no claim, but she insisted, and he drew the provision accordingly.

JOHN P. COWLES, *for proponent,*

SULLIVAN, KOBBE, & FOWLER, *for contestants.*

THE SURROGATE.—Though the will in this case is very informal, yet it seems to me, it has been executed in substantial conformity to the requirements of the statute.

In *Campbell* v. *Logan* (2 *Bradf.,* 98,) it is substantially held that where a testatrix desired a former will. to be altered, and a new will was drawn, and it was read to the testatrix and was signed by her, she holding the pen, and another party guiding it for her; she stating that the writing was sufficient, and asking the witnesses to sign the writing, though the witnesses could not remember that she declared it to be her last will, but only said, it was all right; such evidence established a substantial declaration by the decedent of the testamentary character of the instrument at the time of its execution. (See also *Van Hanswyck* v. *Wiese,* 44 *Barb.,* 495.)

In *Moore* v. *Moore* (*id.* at page 265), Surrogate BRADFORD said: "No particular form is requisite; all that the law requires is, that the testator shall communicate to the witnesses that it is his will, and he desires them to attest it; this can be done by reading, and other acts performed by a third person, provided an intelligent assent on the part of the testator be shown. Indeed, not a word of necessity need be said; a deaf mute might go through all the ceremony by means of a written communication."

In *Vaughan* v. *Burford,* (3 *Bradf.,* 78), the same learned judge, at page 83, says, " reading aloud before he signed,

followed by the act of signature, constituted a testamentary declaration."

And in *Carle* v. *Underhill*, (3 *Bradf.*, 105,) the following language is used: "when the testator in the presence of the subscribing witnesses dictates the provisions of the instrument—reads it aloud after it is drawn—signs it, and requests them to give it their attestation, the substance of what the statute requires is performed; that is, he manifests it, and makes public and open, the nature of the act."

On the question of undue influence, in *Blanchard* v. *Nestle*, (3 *Denio*, 37), Judge JEWETT says: "a person has a right by fair argument or persuasion to induce another to make a will, and even to make it in his own favor. The procuring a will to be made by such means is nothing against its validity." In *Gardiner* v. *Gardiner* (34 *N. Y.*, 155), Mr. Justice DAVIES, at page 162, uses this language: "undue influence must not be such as arises from the influences of gratitude, affection, or esteem, but it must be the control of another will over that of the testator, whose faculties have been so impaired, as to submit to that control, so that he has ceased to be a free agent, and has quite succumbed to the power of the controlling will."

The fact that there is no attesting clause to the instrument in question does not affect the validity of the will, as such clause is a part of the will, and is not required as a part of its due execution by any law. (*Jackson* v. *Jackson*, 39 *N. Y.*, 153).

It is true that the proof in this case shows that some of the provisions of the will were suggested by the subscribing witnesses, but I think there is an entire absence of proof to show the acquiescence of the testatrix in the suggestions, was not voluntary; indeed, her persistence in making provision for the children of Dillon

affords convincing evidence of her free will in that respect, and while her forgetfulness of her son's claims upon her bounty may militate somewhat against her clearness of mind, yet it is quite evident, that the provision in behalf of her son, was neither unduly influenced or coerced, and the fact that her son had been long away from home, and all trace of him apparently lost, forms some excuse for her non-remembrance of him; and the fact of her living separate from her husband for many years seems to me a sufficient explanation of his not being remembered in the will.

From the best consideration I have been enabled to give to the evidence in this case, and the questions of law involved, I am of the opinion that the will should be admitted to probate.

Let a decree be entered accordingly.