NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
November, 1879.

## MATTER OF COLLINS.

*In the matter of the probate of the will of* WILLIAM R.
COLLINS, *deceased.*

It is not necessary that the declaration of a testator, that the instrument
signed by him is his will, should be made in the very act of signing.
It is sufficient if the acts be done on one occasion, and form parts of
the same transaction.

Acts constituting sufficient publication considered.

The intervention of a blank page between disposing parts of a will, though
a careless method, does not necessarily invalidate the instrument, es-
pecially where the blank divides a continuous sentence. Nor does the
fact that the attestation clause is appended by means of a sheet pasted
at the end of the will.

The instrument propounded was drawn on a sheet of legal cap, commenc-
ing on and covering the first page, which ended in the body of a sen-
tence, passing over the second page, which was blank, the unfinished
sentence continuing, and the instrument being concluded, and sub-
scribed by the testator on the third page, which was marked "2d,"
and to which was pasted a supplementary sheet containing the attesta-
tion clause, and the subscribing witnesses' signatures. *Held,* a suffi-
cient execution.

Heady's Will, 15 *Abb. N. S.,* 211,—distinguished.

THE instrument propounded bore date March 14,
1877, and was witnessed by John A. Smith and James
C. H. White, and appointed Phillip W. Verlander,
executor.

It was drawn upon a sheet of legal cap, commencing
on the first page and covering that, passed over the
second page, leaving it blank, and continued upon the
third page, on the left hand corner of which was marked
"page 2d," and concluded on that page, which was sub-
scribed by the decedent. Then a half sheet of legal cap

was pasted on the bottom of that page, containing the attesting clause, with the signatures of the subscribing witnesses subscribed thereto.

William Collins, a son, filed objections to the probate, which were subsequently withdrawn, except on the question of execution.

On the hearing, John R. Smith, one of the subscribing witnesses, testified that he knew decedent in his lifetime for the last five years; that decedent's signature was attached to the instrument in his presence, and that the other subscribing witness was present; that decedent, to the best of witness's belief, said that it was his last will, and about the last thing he was going to do on earth; that he used the word *will*, and requested him to witness it, which he did in decedent's presence, immediately after decedent had signed his name; that he considered decedent perfectly sound at the time, and free from restraint, and that the other subscribing witness signed at decedent's request.

On cross-examination, witness testified that he thought decedent was sixty-seven or sixty-eight years of age; that the will executed was in witness's handwriting; that he copied it by decedent's request, inclosed it in an envelope, where it remained, he thought, for two or three weeks, when he delivered it to decedent about a week before its execution, in the Morrisania Odd Fellows lodge room, at a meeting of the lodge, before the meeting commenced; that he did not see it after delivering it to decedent until the date of execution; that he thought it was in the same shape when delivered to him as when it was executed; that it was executed at the secretary's desk, about eight o'clock, or a few minutes before; that

decedent first said he would like to have the matter settled now, holding the envelope in his hand; that witness was the secretary of the lodge; he took the paper out, and witness asked him who would be the other witness, and he said Mr. White, who came into the room as he spoke, whereupon he went to him and brought him to the desk; that decedent signed his name, then witness, and afterwards Mr. White; that decedent, just as he was signing his name, directed his remarks to both the witnesses; that witness was on one side of the desk and Mr. White on the other. Witness, when asked whether the last leaf was pasted on before the execution of the will, testified that he believed it to have been pasted on before the execution, but was not certain; that he thought he pasted it at his house when he made the copy, but was not certain; that he marked the pages when he made the copy. On re-direct examination he testified that after the execution decedent took charge of it, and witness next saw it the evening of decedent's funeral, at his late residence.

James C. H. White, the other subscribing witness, testified that he knew decedent in his lifetime for about twenty years, and on looking at the instrument, testified that decedent's name was subscribed thereto in his presence, and he declared it to be his last will and testament; and that his name as a subscribing witness was written by witness at the request of the decedent, in the presence of the other subscribing witness, and that decedent was of sound mind, and free from restraint; that the first he knew of the matter was the evening when it was executed, when he entered the lodge room. Decedent first spoke to him, and asked him if he would sign his will—

be a witness to his will; that they then went to the desk, where decedent signed, then Mr. Smith, and then witness; that he told witness it was his will after he had signed, and said so when he requested witness to sign; that decedent said it was his will before he signed his name; that witness did not notice how the paper was fastened; that it was fastened as papers usually are; he thought that he saw nothing unusual in the fastening; that he did not notice any blank page; that witness read part of the instrument which he signed; that he signed it at the request of decedent; that he did not remember particularly whether his attention was called to the facts stated in the attestation clause; that he understood his signing that clause meant that he had witnessed the signature of decedent; that the only time decedent requested him to sign his will, was when witness entered the lodge room, and that he saw enough of it to understand what the instrument was; that decedent held the instrument in his hands when he met witness on his entrance to the lodge room, and asked him to subscribe as a witness.

On cross-examination he testified that the substance of what decedent said after the parties had reached the desk, was that the instrument was his will.

On re-examination he testified that he was first informed as to the instrument on his entrance, but when they approached the desk, the subject was conversed about; that it pertained to the will, but he could not remember the language.

The proponent here rested, and the contestant announced that he should offer no testimony on the question of the competency of the decedent, but submit the

case upon the proofs already in, and a brief on the question of execution.

SILAS D. GIFFORD, *for proponent.*

E. P. BROOKS *and* HUBBARD HENDRICKS, *for contestant.*

THE SURROGATE.—There seems to be no substantial defect in the proof of execution by the subscribing witness Smith, which is full and complete, on his direct examination as corrected by his cross-examination, even if it be assumed that his expression "to the best of my belief" qualified or impaired the force of his testimony. But when his attention was called to this expression on cross-examination, he testified distinctly that it applied to another portion of the decedent's declaration, and not to the statement that it was his will; and he testifies that these remarks were made when he was signing his name.

. The testimony of the witness White seems to be liable to more criticism, and if the other subscribing witness had not been more definite, it would certainly jeopardize the probate of this will; but when he testifies that the only information he received from decedent, that the instrument executed by him and subscribed by the witnesses was his will, was when the witness entered the room and decedent approached him, holding the will in his hand, and the instrument is thus satisfactorily identified, I should regard it as substantially published, so far as this subscribing witness was concerned; and he adds afterwards, that there was a conversation about a will, the substance of which was that decedent said, after he reached the desk for the purpose of signing, that it was his will.

In Jackson *v.* Jackson (39 *N. Y.*, 153), Mr. Justice

WOODRUFF, at page 159, in commenting upon that sub-ject, says: "The order of the several things constituting one complete execution by the testator, is not material if they are, in fact, done, as nearly as may be, at the same time. Thus the statute requires that the testator at the time of making such subscription shall declare the in-strument to be his last will and testament. But this does not make it necessary that the declaration shall be uttered while in the very act of writing. It may be im-mediately before or immediately after; it is enough if it be on the same occasion and form part of the one trans-action."

I entertain no doubt that the proof is sufficient to es-tablish the due execution of the instrument as a last will and testament. The next question to be considered is the manner in which the instrument appears to have been written, leaving a blank on the second page, and also a sheet attached, on which the attestation clause is written. The proof tends to show that the instrument in question is in the same condition that it was when executed; in-deed, there is strong internal evidence of that fact, for the sentence commencing at the bottom of the first page is concluded at the top of the third page of the sheet, and shows a clear continuity in the same handwriting; be-sides, the first page is so marked, and the second written page is also marked as the second page, and is shown to have been written at the time the instrument was drawn by the scrivener who copied from another in-strument at the request of the decedent. Under these circumstances, though it is a very careless mode of writing so important an instrument as a will, and affords an opportunity for the fraudulent insertion

of provisions not drawn to the attention of decedent in an ordinary case, still the continuity of the sentence, and the other proof of the identical condition of the will, as offered for probate and when executed, in my opinion renders it proper that the will should be admitted to probate, notwithstanding the authorities to which my attention has been called, particularly that of Heady's will (15 *Abb. N. S.*, 211), decided by the learned Surrogate of Westchester county, in 1873, in which he is pleased to express the danger of leaving a blank page intervening in the midst of the disposing parts of a will, and cites the cases of Willis *v.* Low (5 *Notes of Cases*, 428) ; Smee *v.* Bryer (6 *Id.*, 20). But in that case another very serious obstacle to the probate of the will existed in the fact that the attestation clause was written on the fourth page of legal cap, but inverted, and there signed by the witnesses, which he adjudged to be a failure to subscribe the will at the end thereof by the subscribing witnesses, and for which he rejects the same, not passing upon the effect of the blank ; both of the cases referred to by the said Surrogate being authorities upon that particular question, and not as to the effect of leaving a blank in the body of the will. The case of Gore (3 *Curtcis*, 759), was where a will concluded at the bottom of the first page, the second being left blank, and on the third was the attestation clause, at the foot of which were the signatures of the testator and the subscribing witnesses, and it was held that it was signed at the end.

I am of the opinion that under the proof in this case and the continuity of the sentence of the will, from the bottom of the first to the top of the third page. there is

a sufficient protection against imposition and fraud to warrant the admission of the instrument in question to probate ; and that the instrument propounded was duly executed according to the requirement of the statute, by the testator, when of sound and disposing mind, free from undue influence.

Let a decree be submitted for signature.