CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SUR-
ROGATE.—August, 1881.

LARABEE V. BALLARD.

*In the matter of the probate of a paper propounded as a
codicil to the last will and testament of* KELSEY
BALLARD, *deceased.*

The rule reiterated, that a substantial compliance with each of the four re-
quirements of the statute relating to execution (R. S., part 2, ch. 6, tit.
1, § 40), is necessary to make a valid will.

After the scrivener, K., who drew the paper propounded as a codicil, had
completed the draft, decedent requested him to sign decedent's name
thereto "*per* W. K.," which he did.—

*Held,* that such signature of K., was not available as that of a subscribing
witness.

While the scrivener was drawing the alleged codicil, decedent asked him
whether he could witness it without calling any one else, whereto the
scrivener assented. Afterwards, decedent went into a store and asked
B., who was there, to witness an alteration in his will. Decedent and
B. then went into the office where K. was, with the instrument. B.
thereupon asked decedent *if he acknowledged that to be his work,* whereto
decedent assented.—

*Held,* no sufficient declaration by testator of the character of the instrument.

THIS was a petition by Truman A. Ballard for the pro-
bate of an instrument propounded as a codicil to dece-
dent's will; opposed by Phœbe A. Larabee and others.

The facts appear sufficiently in the opinion.

WILLIAM MANLEY, *for proponent.*

D. B. ALLEN *and* W. G. LAIDLAW, *for contestants.*

THE SURROGATE.—Every last will and testament of
real or personal property, or both, shall be executed or
attested in the following manner:

1. It shall be subscribed by the testator at the end of the will.

2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

3. The testator . . . . shall declare the instrument so subscribed to be his last will and testament.

4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator (R. S., part 2, ch. 6, tit. 1, § 40).

A multitude of cases, decided since the enactment of the statute recited, shows clearly that these requirements are not a dead letter, but that a substantial compliance with all their provisions is absolutely essential to make a valid will.

In the case of Chaffee v. Bap. Miss. Conv. (*10 Paige, 85*), which is recognized as a leading case, the testatrix called the attesting witnesses into her room, placed her finger on her mark at the end of the instrument and said to the witnesses: "I acknowledge this to be my last will and testament." The court held that this was not sufficient proof that she acknowledged the mark to be her subscription to the instrument. The witnesses unquestionably knew the nature of the act they were performing, but the plain provisions of the statute were not fully complied with.

In Seymour v. Van Wyck (*2 Selden, 120*), the testator subscribed the instrument in the presence of the attesting witnesses, and gave directions to the draughtsman to write what was necessary for the witnesses to sign, and

requested them to sign as witnesses, which they did in his presence; but testator omitted to declare the instrument to be his will.   In that case, the testator was unmistakeably of sound mind, and the nature and character of the transaction must have satisfied the subscribing witnesses that they were officiating as witnesses to his will, yet the court affirmed the decree of the Surrogate rejecting the instrument.   One of the indispensable requisites in the execution of wills, to wit, the declarathat it was his last will, was omitted, and the court justly came to the conclusion that the statutes were not purely a fiction devised for the amusement and entertainment of the readers of Beadle's publications.

In Mitchell v. Mitchell (*16 Hun, 97*), which was affirmed by the Court of Appeals, the testator handed a paper to one of the witnesses, both being present, and said he had a paper he wished them to sign.   He also said: "This is my will, I want you to witness it."   He also declared it to be his last will and testament, but neglected to acknowledge that he had signed the same, or that the subscription was his own.   The court held that the will was not properly executed.

In the famous case of Jackson v. Jackson (*39 N. Y., 153*) the subscribing witnesses signed the instrument *before* the testator, but while all were present, and upon the same occasion that the will was subscribed by him; yet the court, holding rigidly and inflexibly to a strict interpretation of the statute, rejected the instrument propounded.   See, also, the strong case of Lewis v. Lewis (*11 N. Y., 221*).

In fact, so uniform and frequent are these decisions that the rule has become thoroughly established, that a

substantial compliance with the four statutory require-
ments is necessary to make a valid will.

In the case under consideration, Kenyon, the scrivener
who drafted the codicil to the will, testifies that, after
he had completed the draft of the will, testator requested
him to sign his—testator's—name "per W. Kenyon,"
which he did.

The statute says each attesting witness shall sign *as a
witness.*

It is the baldest pretence to say that Kenyon signed
his name *as a witness.*   He wrote testator's name at his
request, in accordance with his directions, and when
that was done, the first of the four statutory safeguards
or requirements had been complied with.  ·

There were still three separate and distinct steps in
the procedure, necessary to be made before his will was
validly executed, and one of them was the signature of
the attesting witnesses.   Kenyon testifies that he sup-
posed he had signed the codicil again as a witness, until
the instrument was shown him on the trial, clearly
showing that it was an omission on his part, that the
signature made was in no sense as an attesting witness.

But there are other defects in this loose proceeding,
equally as fatal as the one instanced.

While Kenyon was drafting the codicil, Ballard asked
him if he could witness it without calling any one
else.   Kenyon said he could.   There was no other publi-
cation of the codicil to Kenyon, no declaration that the
instrument was a codicil to his last will and testament.

After the signing had been done by Kenyon for the
testator, Ballard went into the store where Butterfield,
the attesting witness, was, and asked him to witness an

alteration in his will. They then went into the office where Kenyon was, with the instrument. Butterfield asked testator "if he acknowledged that to be his work?" He said he did. There was no other publication or declaration or acknowledgement of any kind, made to Butterfield. This, certainly, was not a sufficient acknowledgement, in the light of the cases I have cited.

I dislike exceedingly to reject this codicil on what may seem so technical grounds, but these provisions of the statute are at once simple, easily to be comprehended and salutary. For courts to disregard them by evasion would be the boldest, most reprehensible violation of duty, a base attempt to shirk responsibility. The surest method of rendering a just statute obsolete in practice is to treat it slightingly, and as of no consequence; but the lawyer who does it is untrue to his profession and to his manhood. If courts construe the statutes according to their letter and spirit, testators will soon learn the necessity of care and caution in the execution and attestation of their wills. The codicil must be rejected.

Decreed accordingly.