(67 Misc. Rep. 13.)

## In re DE HART'S WILL.

(Surrogate's Court, Tompkins County. March 23, 1910.)

1. WILLS (§ 111*)—FORM AND CONTENTS—SIGNATURE.

A statutory requirement that a will shall be subscribed by the testator at the end of the will is to be construed liberally in favor of the will, and a will which, after appointing an executrix, continues, "the above written instrument was subscribed by (signature of testatrix) March 10th in the year of our Lord 1908 and (testatrix) acknowledged to each of us," etc., followed by the names and residences of the witnesses, is within such statutory requirement.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 268; Dec. Dig. § 111.*]

2. WILLS (§ 73*)—VALIDITY—DISPOSITION OF PROPERTY.

A will is valid which merely appoints an executor without making any disposition of property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 190, 191; Dec. Dig. § 73.*]

3. WILLS (§ 121*)—REQUISITES AND VALIDITY—ATTESTATION CLAUSE.

The attestation clause is not a necessary part of a will, and its form is not material.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 318; Dec. Dig. § 121.*]

4. WILLS (§ 84*)—REQUISITES AND VALIDITY.

The law does not prohibit a testator from writing his own will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 204; Dec. Dig. § 84.*]

5. WILLS (§ 119*)—REQUISITES AND VALIDITY—PUBLICATION.

It is necessary to the valid execution of a will that the testator state that the instrument is his last will, but no particular form of words or acts of publication are necessary, and any communication to the witness either by word, act, signs, or deed, which makes it certain that the testator means the paper which he signs to be his last will is sufficient, nor is it essential that the words of publication be uttered at the time of signing the will, but they may be made prior thereto.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 306; Dec. Dig. § 119.*]

6. WILLS (§ 302*)—REQUISITES AND VALIDITY—EVIDENCE OF PUBLICATION.

The fact that a will is entirely in the handwriting of the testatrix furnishes conclusive evidence that she understood the contents of the will, and, in proving its execution, evidence of its publication may be somewhat relaxed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 702; Dec. Dig. § 302.*]

7. WILLS (§ 302*)—REQUISITES AND VALIDITY—SUFFICIENCY OF EVIDENCE OF PUBLICATION.

Evidence on contest of the probate of a will *held* to show a valid execution and publication.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 700; Dec. Dig. § 302.*]

Contested application for the probate of the will of Mary A. De Hart, deceased. Will admitted to probate.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

R. Horton (M. N. Tompkins, of counsel), for petitioners.
George F. Slocum, for Nellie Albright and Grant Lawrence.
Scott W. Crane, for Arthur Lawrence and others.
Hugh W. Darrin, special guardian, for Alice Lawrence, an infant.
E. H. Bostwick, special guardian, for Lewis Lawrence, an incompetent.

SWEETLAND, S.   This is a proceeding for the probate of the will of Mary A. De Hart. The will produced is holographic, with a holographic attestation clause, written on one page of foolscap paper, being entirely in the handwriting of the testatrix, except the names and residences of the attesting witnesses. The will, so far as is material for the consideration of this case, commencing two sentences above the signature, reads as follows:

"Likewise I make, constitute and appoint said Alzina M. Straight to be sole executrix of this my last will and testament. The above written instrument was subscribed by MARY A. DE HART, MARCH 10TH In the year of our Lord nineteen hundred and eight and Mary A. De Hart acknowledged to each of us that this instrument so subscribed to be her last will and testament and we at her request have signed our names as witnesses and written opposite our names our respective places of residence.

"Darwin Rumsey, residing at Enfield, Tompkins Co., N. Y.
"Samuel J. Rumsey, residing at Newfield, Tompkins Co., N. Y."

The signature and date written in the presence of the attesting witnesses are indicated by large type.

The will is contested by heirs of the decedent on the ground that it is not executed as provided by the statutes of the state of New York. They insist that the will was not signed at the end by the testatrix, and that publication thereof is defective. There is no claim that the testatrix was not competent to make a will, and there is no suggestion of fraud or undue influence.

The testimony of the subscribing witnesses fully establishes the due publication of the will, providing their testimony is true. Darwin Rumsey, one of the subscribing witnesses, a neighbor of the testatrix, had known her for years. He has been justice of the peace, is a farmer, and has made his will, and has had some other experience in the preparation of wills. The day the will was executed the testatrix telephoned him to come to her residence and to bring some one with him. In response to that call, he went to the residence of the testatrix, taking with him his son, Samuel Rumsey. Their testimony is clear and positive. They testified that, after they had reached the home of the testatrix, she said she had made her will and wished them to sign it as witnesses. She then went to the bureau in the same room, and brought out the will, placed it on the table, saying she had written it herself; it was just as she wanted it; that she could do it just as well as any one else; that her mother had written her own will; and that she, the testatrix, had copied from her mother's will. On the sixth line from the bottom was a blank space extending from the right side three-fourths across the page. On this blank line she wrote her name "Mary A. De Hart," and after it the words "March 10th," the date of execution. Those words, nearly filling the blank space, are written somewhat coarser than the other part of the will. She then

handed the pen to the elder Rumsey, who then and there wrote his name and address on the will at the end of the attestation clause, and he, in turn, handed the pen to his son Samuel, who thereupon wrote his name and address on the line immediately under his father's. Both witnesses saw her sign the will, and they signed as witnesses in her presence and in the presence of each other, all using the same pen and ink from the same bottle. The subscribing witnesses are intelligent persons, of good standing.

The statute provides: "A will shall be subscribed by the testator at the end of the will." This requirement is an essential, but it is to be construed liberally in favor of the will, and no rules of construction should extend beyond the requirement of the statute. Hoysradt v. Kingman, 22 N. Y. 372. The reason for requiring the signature of the testator to be at the end of the will is for the purpose of avoiding additions to the will after its execution. The law does not require any particular form for the wording of a will, and it is very usual to find words and phrases in a will other than disposing words. It is not unusual to find words of advice and direction in a will, as well as requests. A will may be valid without making any disposition of property, as, for example, where a will merely appoints an executor. It is a rule of very general application that surplus words in a document do not vitiate it, so in the will under consideration some of the words of the attestation clause are incorporated in the will, and that is in no sense harmful. The attestation clause is no necessary part of the will. Jackson v. Jackson, 39 N. Y. 156. A regular attestation clause is useful as a memorandum of the essentials that occurred at the time of the execution of the will and as an aid to the memory of the witnesses, and is especially valuable in case of the death of the subscribing witnesses. It is not essential to the validity of a will. The form of the attestation clause is not material.

In considering this case, we find that an almost similar question has been before the courts on other occasions. In the case of Younger v. Duffie, 94 N. Y. 535, 46 Am. Rep. 156, the testator signed at the end of the attestation clause, and, after his signature, came that of the subscribing witnesses, which was held a substantial compliance with the statute, and that the signature was at the end of the will; citing Matter of Gilman, 38 Barb. 364, holding in substance that, if no disposing provision follows the testator's signature, the signature is at the end of the will. In Will of Cohen, 1 Tuck. 286, the testator signed beneath the attestation clause, and the execution was held good. Under an English statute of wills (1 Vic. c. 28, § 9), similar to ours, a testator signed his will by writing his name in the attestation clause. It was held that the signature was at the end of the will and the will entitled to probate. In Goods of Walker, 2 Swaby & Tristam, 354. In Matter of Noon, 31 Misc. Rep. 421, 65 N. Y. Supp. 568, the testator used a printed will blank on which she wrote her will and subscribed in the attestation clause. The court held that the name being in the attestation clause was at the physical end of the will, inasmuch as the attestation clause is not a necessary part of the will. Matter of Acker, 5 Dem. Sur. 19, is to the same effect.

It is clear from the above decisions that the testatrix by signing in the attestation clause incorporated in her will a part of the attestation clause, which is surplusage, and the signing was as truly at the end of the will as though she had signed just above the attestation clause, as is usually done.   The testatrix in this case did not divide her will into paragraphs; the whole will being one solid paragraph.   I am satisfied that she complied with the requirements of the statute as to the signing of the will.   Some of the contestants have confused the case of Sisters of Charity v. Kelly, 67 N. Y. 409, thinking it authority against this will, but I do not so read that case, which is easily distinguishable, the facts being different in the two cases, as Kelly, the testator, signed after the witnesses had signed.   There is nothing in the Kelly Case that can be construed as an authority against the will in question.

The testatrix wrote out her will complete before the witnesses arrived, except the right three-fourths of the line on which she subsequently signed which was left blank until she signed it in the presence of the attesting witnesses.   The law does not prohibit a testator from writing her will.   If the will had been written by some other person except the above referred to part of the line and the testatrix had subsequently signed on that line as she did, the arguments of the contestants would lose all force, and its fallacy be apparent.   Suppose, by way of illustration, the testatrix had produced for execution instead of this will, one identical in words, typewritten, with the identical blank line, and the testatrix had under identically the same circumstances written her name and after it, March 10th, in the blank space; would the execution of the will be open to question?   Surely by writing this will herself the execution was not weakened, but strengthened. It is necessary to the valid execution of a will that the testator state that the instrument is his last will.   This is called the publication of the will, and is designed to show that the testator knows the paper is a will, and not some other instrument.   No particular form of words or acts of publication are prescribed by law.   Any communication to the witness, either by word, act, signs, or deed, which makes it certain that the testator means the paper which he signs to be his will, is sufficient. It is not essential that the words of publication be uttered at the time of signing the will.   They may be made prior thereto, or at the time of execution, if taken all together they show the purpose of the testator to be that the instrument is intended as his last will and testament.

The fact that the will is entirely in the handwriting of the testatrix furnishes conclusive evidence that she understood the contents of the will, and it is well established that in proving the execution of a holographic will evidence of its publication may be somewhat relaxed. Matter of Akers, 74 App. Div. 461, 77 N. Y. Supp. 643; Matter of Palmer, 42 Misc. Rep. 469, 87 N. Y. Supp. 249; Matter of Beckett, 103 N. Y. 167, 8 N. E. 506; 1 Underhill on Wills, pp. 280, 281.   One reason for this is the fact the testator by writing the will must surely know its contents and assures considerable consideration and deliberation, and establishes that no fraud was perpetrated in substituting some other paper, as might be possible had the will been written by another person.   It has been held:

"A substantial compliance with the statute is sufficient. It requires no literal adherence to its own words and phrases, but permits the necessary information to be given in any manner adequate to the desired result. Where the testator cannot speak at all, or only with difficulty, he may communicate his knowledge by signs or by words to some listeners unintelligible. But, if he does that in a manner capable of conveying to the minds of the witnesses his own present consciousness that the paper being executed is a will, that must necessarily be sufficient." Coffin v. Coffin, 23 N. Y. 9, 80 Am. Dec. 235; Lane v. Lane, 95 N. Y. 494; Matter of Beckett, 103 N. Y. 174, 8 N. E. 506; Darling v. Arthur, 22 Hun, 85; Matter of McGraw, 9 App. Div. 372, 41 N. Y. Supp. 481.

It was held sufficient execution where the will was read to the testator and approved and signed by him. Burk's Will, 2 Redf. Sur. 239. It was held in Robbins v. Robbins, 50 N. J. Eq. 742, 26 Atl. 673, and Hildreth v. Marshall, 51 N. J. Eq. 241, 27 Atl. 465, that where the testator told two persons he intended to make his will at an indicated time and specified place, and asked them to attend there and act as witnesses to his will, and they met the testator at the appointed time and place and the testator signed his will, after which he handed it to the witnesses, who also signed it, though the testator said nothing at the time of the execution as to the nature of the instrument, the publication was good.

When we consider the conversation the testatrix had with the witnesses at and prior to her signing the will and the significant fact that after signing the will she handed the pen to one of the witnesses, and he immediately signed the will as a witness and then handed the pen to the other witness, the due publication is established. The subscribing witnesses testified to the execution of the will with positiveness and candor. Their testimony fully establishes that all the legal requisites were complied with. They are entirely disinterested, and I believe are entitled to full credit. I find the will was signed and executed according to statute, and is entitled to probate.