*In re* GRAHAM'S WILL.

(*Supreme Court, General Term, First Department.* February 14, 1890.)

1. WILLS—PROBATE—TESTIMONY OF SUBSCRIBING WITNESSES.

Code Civil Proc. N. Y. § 2618, providing that, before a will shall be admitted to probate, two at least of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify, does not require that each or any of the witnesses must testify that the requirements of the statute in respect to execution have been complied with.

2. SAME—VALIDITY—UNDERSTANDING CONTENTS.

Where a will is dictated, in the presence of the testator, by his attorney, is read over to him, paragraph by paragraph, is assented to by him, and is executed by him some days thereafter, and he keeps it for some years prior to his death, an objection that he did not understand its contents, based principally on its peculiar provisions, cannot be sustained.

Appeal from surrogate's court.

Application for the probate of an instrument propounded as the will of John R. Graham, deceased. The instrument was admitted to probate, and John R. Graham, Jr., and Kate Storm appeal.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Hubbard Hendrickson,* (*N. B. Hoxie,* of counsel,) for appellants. *Taylor & Parker,* (*Alfred Taylor,* of counsel,) for the executors, respondents. *E. J. Knaver,* special guardian.

VAN BRUNT, P. J. The decree of the surrogate was attacked upon the ground that the evidence does not sufficiently prove compliance with the statute as to the formal execution of the will in question, and that the decedent did not, at the time of signing the will, understand its contents or effect, and that he was unduly influenced to execute it, and therefore it was not truly his will. The learned counsel for the appellants claims that the statute requires that the following facts should be proven by at least two witnesses, namely: The subscription by the testator, at the end of the alleged will, in the presence of two witnesses, or his subsequent acknowledgment; the publication of the will, and the request to the two witnesses to sign the same; and that they signed it in his presence, and in the presence of each other. And, in support of this extraordinary proposition, we are somewhat surprised to find that he is able to cite an authority, *In re Van Geison,* 47 Hun, 5, in which the court say that, in order to admit a will to probate, each of the statutory requirements must be satisfactorily proved by two subscribing witnesses, if so many are within the state, and competent and able to testify. If this were the rule, then a lapse of memory upon the part of a witness, or any witness evilly inclined, might prevent the probate of a will. This extraordinary proposition is founded, apparently, on section 2618 of the Code, in which it is provided that before a will shall be admitted to probate two at least of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify. The section does not say that each of the witnesses, or any of them, must testify that the requirements of the statute in respect to execution have been complied with. In fact, it has been decided by the court of appeals, in the case of *Brown* v. *Clark,* 77 N. Y. 369, that where there is no proof that the statutory requirements had been complied with, except such as is contained in the attestation clause, the will may be admitted to probate. The court say, in that case, the witnesses, after a lapse of several years, fail to recollect affirmatively the facts attested by them over their signatures. The mere non-recollection of witnesses, under these circumstances, would not justify a finding that the statutory requirements were not observed. Their lack of memory does not rebut the presumption of due publication arising from the attestation clause, and the other circumstances. The same was held in the case of *Peck* v. *Cary,* 27 N. Y. 9. And in the case of *Trustees*

v. *Calhoun*, 25 N. Y. 422, the rule is laid down that "it is, of course, too late to claim that the facts  *  *  *  must all, or any of them, be established by the concurring testimony of the two subscribing witnesses.  Both of those witnesses must be examined, but the will may be established even in direct opposition to the testimony of both of them.  This is too well settled to call for the citation of authorities." It is needless, then, to multiply citations to establish the falsity of the proposition upon which the point of the appellant rests as to the due execution of the will, except, perhaps, to call attention to the case of *Hoysradt* v. *Kingman*, 22 N. Y. 372, where it was held that it was not necessary to the due execution of the will that the witnesses should subscribe in the presence of each other.  The testimony of Mr. Chedsey showed due execution of the will.  He was a lawyer, and was presumed to know what was required; and, whether his recollection was entirely distinct or not as to occurrences which had taken place some years before, the presumptions were so strongly in favor of due execution that the learned surrogate was more than amply justified in holding that it was established.

The objection that the testator did not, at the time of the signing of the will, understand its contents and effect, seems to be based principally upon the assumption that it is not such a will as his children would have made if they had had the disposition of his property.  The appellants expressly disclaim want of testamentary capacity, but say that, because of the peculiar provisions of the will, it is impossible that the testator understood it, notwithstanding the fact that he went to his own attorney, was present while the will was being dictated to an amanuensis, heard each paragraph read, executed it some days thereafter, and kept it for some years prior to his death.  If we are to consider the testimony of Mr. Chedsey, it seems to be conclusive upon the point that the testator was made aware of all the provisions of this will.  As has already been said, the will was dictated in his presence, was read over to the testator paragraph by paragraph, and to its provisions he assented.

Great stress has been laid upon the fact that in the will as originally dictated by Mr. Chedsey the daughter Belle of the testator was called "Belle Storm," when in fact she was unmarried, and that it was the daughter Kate who was the wife of Mr. Storm.  We are entirely unable to appreciate the weight which seems to have been attached to this incident.  During the progress of dictation it is very probable that the testator did not discover the mistake; but it is evident that he discovered it before the execution, because there is no pretense but that the change was made prior to execution, and that there was no attempt to conceal it, as it is plainly evident upon the face of the instrument itself what existed before the words "Kate" and "Belle" had been changed.  Indeed, we cannot see upon what basis this objection rests, except that it was the wish of all the children of the testator, the beneficiaries under this will, that the trusts contained in the will should be broken; and this seems to have been the purpose for which this contest has been initiated.  But, if we consider only the legal evidence in the case, (because, in our opinion, the evidence of Mr. Chedsey as to the instructions which he received from his client was improperly received, and should not be considered by the court, under the provisions of section 835 of the Code, which provides that an attorney shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment,) the case presented is of a will drawn by the attorney of the testator, duly executed by him before two witnesses, kept by him for some years after its execution, and found among his papers after his death.  It is clear that under such circumstances the necessary presumption is that the will expresses the wishes of the testator.

It is true that the burden of proof rests upon the proponent to establish all the propositions necessary to establish the will, but it is not necessary that these propositions should be established by direct evidence.  The circum-

stances surrounding the execution of the will, and its subsequent history, may sufficiently establish all the requisites necessary to justify its admission to probate. The fact that the will is duly executed, with all the formalities required by. law; that it has been declared by the testator to be his last will and testament, in the presence of· two witnesses, who at his request have signed the same,—presumptively establishes the proposition that the will is the will of the testator, and this presumption cannot be rebutted except by some evidence going to show that such presumption should not prevail. It is not necessary that the testator should have a half dozen witnesses by, who should see him read his will, hear him give directions as to what it should contain; that he should express his satisfaction with each several clause and provision before several witnesses,—in order to show that the will expresses his wishes. The law requires no such impossibilities as this, but only such evidence as may enable the court to find that the will was intelligently executed by the testator. The proof in this case is utterly barren of anything to show that the testator did not fully comprehend the contents of this will, and it cannot be set aside upon any such ground as this.

The claim that undue influence was exercised by his former partner, and their employe Neilson, is also equally unsupported by evidence. In fact, there does not seem to be any evidence to support this claim. It seems to be based upon evidence tending to show that Neilson had told the father of certain delinquencies of the son, which he said made his father angry with him; and when the son was asked, "Were these things so mentioned, any or all of them, true or false?" his answer was: "I cannot say." But there is no evidence whatever that there was any undue influence exercised by Neilson as against the decedent's son. And, even if Neilson was actuated by any improper motives in saying what he did, there is no evidence whatever that it had any influence upon the father; .and, in fact, it would appear that he paid no heed to Neilson, but did actually that which he himself wished.

There was some evidence offered as to certain statements made by the testator during his life-time which were claimed to be inconsistent with the provisions of his will. It is not necessary to go into detail in discussing the evidence of Mr. Storm. It is sufficient to say that many of these statements were made prior to the making of the will, and none seem to have been made thereafter which were inconsistent with perfect and complete knowledge of the contents of the will.

The testator lived for some five years after the execution of the instrument, and during all that time it remained in his possession; and, although it is claimed by the counsel for the appellant that it is somewhat remarkable that a man of such wealth, who had subscribed an instrument of this character, should not have deposited it with the custodian of his money and securities, or in some place of safe deposit, or with some of his intimate friends, we are unable to see anything peculiar in the conduct of the testator in this respect. If it had been deposited elsewhere, in the custody of some particular friend, it would have been strongly argued that the testator, if he understood the importance of the instrument, would not have parted with the possession of it, nor would he have left in any other custody than his own such an instrument for so many years. The decree should be affirmed, with costs against the appellants in favor of both respondents. All concur.