· the respondents that the petitioner has no standing to make the application. In this contention I think they are correct. The only persons under the section who can apply are creditors or persons interested in the estate of decedent. The petitioner is not a person interested in the estate of decedent, as creditors are expressly excepted by the language of subdivision 11, § 2514, which defines the term "persons interested," where used in the act. To sustain his right to petition, therefore, he must be a creditor. The term "creditor" is defined by subdivision 3, § 2514, which, when paraphrased, will read as follows: "A 'creditor' is a person having a claim or demand upon which a judgment for a sum of money could be recovered in an action." Now, as there can be no doubt that the present petitioner could not recover upon his demand as against any assets of the estate not properly employed by the executors in the business continued subsequent to the death of the testator, but would be confined as to his recovery to such assets, it is clear that he is not a creditor of the estate, for the estate would properly include both. He is simply a creditor as to the fund against which he might recover judgment, which is simply an asset or investment of the estate. This view is emphasized by the consideration that, apart from the authority to continue the business, the debt having accrued subsequent to the death of the decedent, the petitioner would not have been a creditor either of the estate or of the decedent; he would have had a claim only against the executor personally. This is true, notwithstanding a court of equity will sometimes, where the executor is shown to be insolvent, permit such a creditor to have the assets of the estate applied to the payment of his claim. Apply the test suggested by subdivision 3 of section 2514. Could the petitioner recover a judgment for a sum of money against the respondent on its claim? Unless it could, it would not be included to the term "creditor." While it might have recourse to so much of the estate as was properly embarked in the business, it is clear the suit of the petitioner could not be maintained against the executors as such. Motion denied.

---

*In re* STILLMAN'S ESTATE.

(*Surrogate's Court, New York County.* February 7, 1890.)

WILLS—PROBATE—EXECUTION—EVIDENCE.
    Where one of the subscribing witnesses to a holographic will testifies that it was executed according to law, the instrument is entitled to probate, though her testimony is contradicted by the other subscribing witness.

Petition by Louisa Killett, Howard Crosby, Margaret A. Gaynor, and the Association for Befriending Young Girls, for revocation of probate of the will of Mary L. Stillman.
*Booraem, Hamilton & Beckett, Joseph B. Owens, Walter Edwards,* and *John J. De Laney,* for petitioners. *Herbert G. Hull,* for respondent.

RANSOM, S. The will, except the printed portion, is in the handwriting of the decedent, and, as to form, in all respects a will. No doubt exists as to her capacity to make a will, nor is there any pretense that she was subject to any restraint. It is, however, strenuously argued that the paper was not duly subscribed and published. The argument in support of this view is a strong one, but it cannot prevail. The purpose of our statute being ascertained, no difficulty will be found in the way of a right decision in this proceeding. The purpose of the statute is to prevent fraud upon the testator, and the first act requiring subscribing witnesses to a will was the statute of frauds, (29 Car. II. c. 3.) The question now under consideration was very soon mooted under this act. *Hudson's Case,* Skin. 79, before the court of king's bench; *Rice* v. *Oatfield,* Strange, 1096; *Goodtitle* v. *Clayton,* 4 Burrows, 2224; *Windham* v. *Chetwynd,* 1 Burrows, 414. See illustration of Lord MANSFIELD, *Lowe* v. *Jolliffe,* 1 W. Bl. 365. Under the English statute of wills, (1837,) see

*Gove* v. *Gawen*, 3 Curt. Ecc. 151; *Chambers* v. *Queen's Proctor*, 2 Curt. Ecc. 415; *Blake* v. *Knight*, 3 Curt. Ecc. 549.   The doctrine of these cases have been approved by the courts of this state.   *Jauncey* v. *Thorne*, 2 Barb. Ch. 40.   The surrogate should be satisfied that the paper propounded was executed in proper form; that is to say, that it was signed by the testator at the end thereof, and attested by at least two witnesses, or, if not signed in their presence, was declared by the testator to be his last will, and his signature acknowledged to both witnesses.   If it appear to his satisfaction, from proof of all the facts and circumstances surrounding its execution, that the testator knew it was his will, whether such proof is given by the subscribing witnesses or by the others; whether by memory of words spoken by testator, or by another or others in his presence and hearing; whether by acts or signs on the testator's part,—the paper propounded is entitled to probate.   The paper may be admitted notwithstanding one or both subscribing witnesses flatly deny that it was either subscribed or published in their presence.

The point is, did the testator know that the paper he signed was his will, and did he in any way disclose such knowledge to the subscribing witnesses. The surrogate is not permitted to rest his decision upon the testimony of the subscribing witnesses.   He must inquire into all the facts and circumstances; and, if he be satisfied that the paper was duly executed by a competent testator, he must admit it to probate.   In the present proceeding, the paper itself proves that the testatrix knew when she signed it that it was her will.   It is holographic.   One of the subscribing witnesses, whose testimony I see no reason to doubt, completely establishes the due execution of the paper according to the very letter of the law.   I do not find the time to analyze her testimony, and make comparison between her statements and those of the other subscribing witness, and point out what to me is abundant reason for accepting her story as the truth; nor do I believe that the other subscribing witness, who contradicts her, and upon whose testimony, if believed, the paper must be rejected, has intended to suppress the facts.   She is mistaken.   Her memory is at fault.   It is perfectly clear to me that the testatrix, at the time she signed the paper, knew it was her will, and she intended to execute it according to law, and she attempted to do so.   One witness says she succeeded, and one says she did not.   Aided by other facts and circumstances surrounding the execution of the paper, I have no doubt about the matter.   The principle involved will be found sustained by the following cases: *Baskin* v. *Baskin*, 36 N. Y. 416; *Coffin* v. *Coffin*, 23 N. Y. 10; *Gilbert* v. *Knox*, 52 N. Y. 125; *Trustees* v. *Calhoun*, 25 N. Y. 422; *Lane* v. *Lane*, 95 N. Y. 494.   I sustain the learned assistant to the surrogate in his ruling against contestant as to the witness Gaynor.   Petition for revocation of probate is denied.

----

## In re TOPPING'S ESTATE.

### (Surrogate's Court, New York County.   January 23, 1890.)

1. EXECUTORS AND ADMINISTRATORS—SALE OF LAND—INVENTORY OF PERSONALTY.
   In proceedings for the sale of an intestate's land to pay debts, a grantee of the heir may show that personal property other than that contained in the inventory of the estate is available for that purpose, though the inventory was made by the heir.

2. SAME—LACHES OF ADMINISTRATOR.
   Under Code Civil Proc. N. Y. § 2759, subd. 5, which provides that a decree for the sale of a decedent's land for the payment of his debts can be made only where the personal representatives have proceeded with reasonable diligence in converting the personalty into money, and applying it to the debts, and it is insufficient for the payment of the same, an administratrix who has made no attempt to collect proceeds arising from a sale of her intestate's personalty by a former administrator, and who has not shown that the attempt would be futile, is not entitled to a decree for the sale of her intestate's land.