In the Matter of the Revocation of Probate of the Last Will
and Testament of ANN VOORHIS, Deceased.

*Courts of Appeals, February* 24, 1891.

*Affirming 54 Hun, 637, mem.*

*Wills.  Execution.*—A substantial compliance with the statute, prescrib-
ing the formalities to be observed in the execution of wills, is sufficient.

Appeal from judgment of the supreme court, general
term, first department, affirming decree of surrogate denying
motion to vacate and annul the probate of a will and con-
firming the probate thereof.

*Wm. B. Hornblower*, for appellant.

*Edward T. Bartlett*, for respondent.

O'BRIEN, J.—Ann Voorhis died in the city of New York,
January 30, 1882, leaving a last will dated October 20, 1879,
and without children, parents, brother or sister.   Her nearest
relatives were nephews and nieces and children of deceased
nephews and nieces.   The will was, after a contest, admitted
to probate November 9, 1885, and about a year thereafter one
of the nieces petitioned the surrogate for revocation of pro-
bate.   This application resulted in another trial and in a
decree of the surrogate sustaining the will and probate,
which the general term has affirmed.

The objections to the will are want of capacity of the
testator to make it, ignorance in part of its provisions when
she executed it, and failure to comply with the provisions of
the statute as to its execution.

It does not appear that the will was read to the testatrix

at the time of execution, or that she read it herself; but it does appear that she called upon the counsel who drew it at his office, communicated to him the disposition which she wished to make of her property, and that he drafted the will according to her directions and read the draft to her at her house, subsequently, and made corrections and changes at her suggestion and that the will in question is a copy of the paper then used and corrected. With respect to the competency of the testatrix, the evidence shows that she was a woman of very little, if any education, quite ignorant penurious, excitable and changeful; but we think there was no reason to believe that she was not fully capable of making a will. She certainly understood the nature and effect of the transaction, had knowledge of the property she was about to dispose of and recollection of the persons having a natural claim upon her bounty. The most favorable view that can be taken of the case for the contestants is, that upon the question of capacity the testimony was conflicting. The surrogate has found, however, upon this evidence, that she was of sound mind and memory and capable of making a will, and as the general term was of the same opinion we have no right to review the facts. Hewlett v. Elmer, 103 N. Y. 156 ; In re Valentine, 100 N. Y. 607 ; In re Yates, 99 Id. 94 ; In re Darrow, 95 Id. 668 ; In re Cottrell, Id. 329 ; Davis v. Clark, 87 Id. 623 ; In re Higgins, 94 Id. 554 ; In re Ross, 87 Id. 514 ; Marx v. McGlynn, 88 Id. 357.

There seems to be no doubt that the deceased intended to make another will. In the early part of the year 1882, one was drawn for her, at her request, to execute, the provisions of which are much more complicated and difficult to understand than that now under consideration. The last paper was more favorable to the relatives, as the bequests to the Bible Society and the Home Missionary Society of the bulk of the estate were wholly omitted. The contestants were aware of its provisions, and it did not seem to occur to any of them that the deceased was incapable of making a will. It,

however, was never executed for the reason that the deceased was taken suddenly ill and became unconscious and remained in that condition until her death. Had it been executed before her illness there is every reason to believe that it would have been perfectly valid, and certainly a more satisfactory disposition of her property, so far as her relatives were concerned, and possibly, on the whole, more equitable and just. But it is enough for us to know that, upon the findings of the surrogate, supported by the evidence, she was capable of making the will in question, and when made it expressed her wishes as to the disposition of her property, and that it never was legally revoked.

The deceased signed the will at her house in the presence of the two subscribing witnesses who attended there in compliance with her request and also in the presence of the counsel who drew it and was present by appointment. These three persons testify that they saw the deceased sign the paper without any aid or assistance. The two subscribing witnesses then in her presence and in the presence of each other signed their names as such, and the only question that arises in regard to the proper execution of the instrument is respecting the formality of publication. On that point the fact must be kept in view that the deceased not only requested the attendance of the witnesses at the execution of the instrument but also the experienced counsel who drew it, in order that every formality necessary to the valid execution of the instrument should be complied with. It is extremely unlikely under these circumstances that such an important requirement of the statute was omitted. The surrogate has found as a fact that the deceased duly published and declared the instrument to be her will in the presence of the two witnesses and the attestation clause recites the publication of the will in the presence of both witnesses. One of the witnesses testified that either the deceased or the counsel said when he signed the instrument that it was the will of the deceased. The other witness testified that before he signed

the paper the counsel asked the deceased. "if she wished these gentlemen to witness her will, and she said yes ;" and the counsel swears that the deceased signed her name to the paper "and the two gentlemen after I had asked her if she had signed and sealed this paper and published and declared it as her last will and testament and requested these gentlemen to execute it as witnesses, and they then signed it as witnesses." This proof was sufficient to sustain the finding of the surrogate that the will was published. A substantial compliance with the statute prescribing the formalities to be observed in the execution of wills is sufficient, and that was established. Gilbert v. Knox, 52 N. Y. 125; Matter of Will of Cottrell, 95 Id. 329 ; Matter of Higgins, 94 Id. 554.

The exceptions taken at the hearing before the surrogate do not present any question of sufficient importance to warrant us in disturbing a result reached only after much litigation. We are of the opinion that they were correctly disposed of in the courts below.

The judgment should be affirmed.

All concur.

---

NOTE ON "SUBSTANTIAL COMPLIANCE WITH THE STATUTE IN THE EXECUTION OF WILLS."

The Code of Civil Procedure has put, in the form of. a statutory enactment, a rule in relation to the proof necessary to show the valid execution of a will, which had indeed before that time been well settled, but had previously existed by force of adjudication alone, viz.: That the due execution of a will might be established by competent evidence, even against the positive testimony of the subscribing witnesses thereto. § 2620.

Though the occasions in which all of the subscribing witnesses testified positively against the due execution of a will have been infrequent of late years, a number of such instances are reported among the earlier English cases which have been cited with approval in recent cases in our courts. Matter of Cottrell, 95 N. Y. 329. Those cases are collated and commented upon in the case of Tarrant v. Ware, reported as a note to case of Trustees, etc., v. Calhoun, 25 N. Y. 425. After reviewing the English authorities, and referring to the evidence of subscribing witnesses,