DWIGHT, P. J., and LEWIS, J., concurred.

Judgment ordered for the plaintiffs on the submission, with costs.

---

IN THE MATTER OF THE PROBATE OF THE WILL OF JOSEPH PEREGO, DECEASED.

*Will — a deaf and dumb person may make a will.*

Upon an appeal from a decree of a Surrogate's Court refusing to admit to probate the will of Joseph Perego, it appeared that Perego was over sixty years old and had been deaf, and substantially dumb, from early childhood; that he had been accustomed to communicate his ideas by gestures and sometimes by writing, and that he was, to some extent, able to understand persons by watching the motions of their lips.

The person who drew the will had known Perego for years, and had frequently conversed with him by signs, and at the time of the execution of the alleged will he was told by Perego, by signs, that he wished to make a will and to leave his property to his sister, with whom he lived. The scrivener then showed him a printed form of a will, afterwards went away and filled it out, returned and gave the will to Perego, who apparently read it with care and indicated that it was satisfactory.

Upon its execution the scrivener, by signs, asked Perego the customary questions and received what apparently were proper answers. The will was apparently properly executed.

*Held*, that it was error to reject the will, and that the facts should be submitted to a jury under section 2588 of the Code of Civil Procedure.

That a deaf and dumb man may make a will provided the statutory formalities are observed in their spirit and intent, and so far as is practicable under the existing conditions.

APPEAL by Rhoda Francisco and Norman B. Shaw, proponents of the will of Joseph Perego, deceased, from a decree, entered in the office of the surrogate of Ontario county on the 24th day of December, 1891, and from that part thereof which states that the written instrument offered for probate " was not executed in con-

formity with the statutes of the State of New York respecting the execution of wills, and that the said Joseph Perego did not publish and declare the same to be his last will and testament, nor did he request the witnesses thereto to sign it as such witnesses, and that said written instrument so offered for probate as the last will and testament of said Joseph Perego is null and void, and that the probate of the same be and it is hereby denied."

*T. M. Howell*, for the proponents, appellants.

*S. Gooding* and *J. P. Faurot*, for the contestants, respondents.

DWIGHT, P. J. :

No question was made of the testamentary capacity of the decedent, nor that the alleged will was duly executed by him. The questions of fact upon which there was some conflict of evidence, and in respect to which the evidence was held by the learned surrogate to be insufficient to warrant the granting of probate to the will, related (1) to the due publication thereof by the deceased as his will; and (2) to the request by the deceased that the witnesses should attach their names as subscribing witnesses thereto.

The decedent was an unmarried man of upwards of sixty years of age, and had been deaf, and substantially dumb, from early childhood. He had been accustomed to communicate his ideas mainly by signs and gestures, constituting a species of pantomime, and sometimes by writing on a slate or pieces of paper, and he was able to understand, to some extent, communications made to him by the motion of the lips of persons who spoke to him. The scrivener who drew his will — a schoolmaster by profession, and, as his testimony taken on commission indicates, a man of intelligence — had known him for several years, and had frequently conversed with him by means of signs previous to the interviews in reference to his will. He was able to read print and some writing, and to write himself, to some extent. Shortly before drawing his will the scrivener had received information from the sister of the testator that the latter desired to have him draw his will; and he visited him at his sister's house, where he had been living for a number of years, taking with him a printed form of a will, which he exhibited to the testator, and

was informed by him by means of intelligible signs that he wished him to draw his will, and that he desired to give his property to the sister with whom he was living. The scrivener went away and filled out the printed form accordingly, inserting an additional provision for the contingency of his sister's not surviving him; and, when he came again, exhibited the draft of the will to the testator, who examined it closely for several minutes, apparently reading it with care, and plainly indicated by signs that it was as he desired his will to be. The scrivener showed him where his name should be signed, and called his attention to the attestation clause, which was printed on the same page with the will, of all of which the testator signified his understanding. The will was executed the next day by the testator signing his full name thereto in presence of the scrivener and three other witnesses, all four of whom signed the attestation clause in his presence, and in presence of each other. The scrivener testifies to the signs by means of which he put the question to the testator, whether the paper thus executed was his will, and the affirmative response thereto; and another of the subscribing witnesses describes the unmistakable dumb show by which the testator invited the witnesses to subscribe their names as such to the will, and thanked them for the service after it was performed. The evidence in both of these respects was, in a manner, contradicted by the other two subscribing witnesses, but mainly to the effect that they either failed to observe and comprehend, or else to remember the matters referred to.

A man is not to be denied the right to make a testamentary disposition of his property on account of defect of speech and hearing. And a deaf and dumb man may make a will if only the formalities prescribed by the statute are observed in their spirit and intent, and in such manner as is practicable under the conditions existing. (*Matter of Beckett*, 103 N. Y., 167, 174; *Matter of Stillman*, 29 N. Y. St. Rep., 213, and the cases cited.)

We desire not to dwell upon the facts in this case in such a way as to prejudice their future consideration, and we, therefore, state, without further discussion, that the result of our examination of the case is to raise serious doubt whether the questions of fact above mentioned were determined in accordance with the due weight of the evidence as it appears in the record.

There was, undoubtedly, a conflict of evidence, and we are unable to concur with the learned surrogate in his findings of fact thereupon. This brings the case within the provisions of section 2588 of the Code and calls for a submission of the questions of fact to a jury.

The decree of the surrogate should be reversed, on the facts, and a trial by jury ordered of the material questions of fact arising upon the issues between the parties, such trial to be had in the Circuit Court in Ontario county.

MACOMBER and LEWIS, JJ., concurred.

Decree of surrogate of Ontario county appealed from reversed on the facts, and a jury trial ordered of the material questions of fact arising upon the issues between the parties ; such trial to be had in the Circuit Court of Ontario county. Issues to be settled (if required), by the presiding justice of this court ; costs of this appeal to abide the final award of costs.