In the Matter of the Probate of the Last Will and Testament of VOLKERT HARDENBURG, Deceased.

JACOB HARDENBURG and Another, the Executors Named in the Alleged Last Will and Testament of VOLKERT HARDENBURG, Deceased, and Another, Appellants; JANE ANN MUNGER and Others, Respondents.

*Interlineation in a will before its execution — evidence of its publication by the subscribing witnesses — declaration in words, unnecessary — request to witnesses to sign — power of the General Term on appeal.*

A change interlined in a last will and testament before the execution thereof is valid.

The failure of one of the witnesses to a codicil to remember what was said in regard to the same, as fully as the other witness who drew the codicil, does not

disprove the facts testified in regard thereto by such other witness, and while section 2618 of the Code of Civil Procedure requires that at least two of the subscribing witnesses shall be produced and examined, it is not necessary in order to obtain the proof of the will or codicil that both witnesses shall state all the material facts required by the statute.

The fact that a testator was fully apprised of the testamentary character of the instrument sought to be probated as a codicil to his last will and testament, may be considered in aid of the proofs tending to establish the publication thereof. Any act of a testator, in the presence of the witnesses, at the time of the execution of his will, which tends to show that he desired to publish the paper as his will and that he wished the witnesses to execute it may be considered.

Although a testator did not in words declare an instrument to be his last will and testament, if it is clear that he treated it as such and intended the witnesses to understand it to be such, it is equivalent to such a declaration and is sufficient to satisfy the requirements of the statute upon the subject; the statute does not necessarily contemplate such a declaration in words in order to render the instrument valid as a will.

The request to the witnesses to sign is sufficient if made by a person superintending the execution of the will in the hearing of the testator and with his silent permission and approval.

Although section 2622 of the Code of Civil Procedure imposes upon the surrogate the duty of being "satisfied of the genuineness of the will and the validity of its execution" offered before him for probate, still he must be so satisfied when the proof, taken together, establishes what the statute requires, and the General Term of the Supreme Court has the power, under section 2586 of the Code of Civil Procedure, to decide the question of fact which the surrogate had before him upon proceedings taken for the probate of a will; and where there is no substantial conflict in the evidence as to the fact of the execution of the will, the General Term will, upon an appeal from the decree of a surrogate revoking the probate of a will, direct that the original probate be confirmed.

APPEAL by Jacob Hardenburg and another, the executors named in the alleged last will and testament of Volkert Hardenburg, deceased, and another, from a decree of the Surrogate's Court of the county of Chautauqua, entered in the Chautauqua County Surrogate's Court on the 20th day of June, 1893, revoking the probate of an alleged codicil to the last will and testament of Volkert Hardenburg, deceased.

*A. B. Ottaway*, for the appellants.

*H. C. Kingsbury*, for the respondents.

WARD, J.:

Volkert Hardenburg of the town of Westfield in Chautauqua county died on the 15th day of March, 1892, leaving a last will and testament in which he made various bequests to his wife, his three sons and a daughter, Jane N. Munger, and other relatives. Before executing his will, and on the 22d of January, 1892, in the forenoon, he sent for Ralph A. Hall, a friend of his and a banker, and stated to him that he desired him to prepare a will, and gave directions as to its contents, of which Mr. Hall made a memorandum. Hall drew the will as he understood the directions, and in the afternoon presented it to the deceased, read it over to him, and when he reached the tenth clause of the will as written, which was as follows: " All the residue of my estate, both real and personal, I desire to be divided among my children, that may be living at the time of my death, to share and share alike therein," the testator, who perfectly understood the paper, said that he desired to change that clause; that he meant to be understood to mean his living sons, instead of his living children. Hall made the desired change in the presence of the testator, but instead of changing it in the tenth clause, he appended what he called a codicil, so that the paper when it was ready for signatures, and when it was signed appeared as follows :

" In witness whereof I have signed and sealed, published and declared this instrument as my will at Portland, Chautauqua county, N. Y., on this twenty-second day of January, one thousand eight hundred and ninety-two.

" RALPH A. HALL,      VOLKERT X HARDENBURG. [L. S.]
        his mark
    " Witness to mark.

" The said Volkert Hardenburg at Portland, Chautauqua county, N. Y., on the twenty-second of January, 1892, signed and sealed this instrument and published and declared the same as his last will, and we, at his request, and in his presence, and in the presence of each other have hereunto written our names as subscribing witnesses.

         "RALPH A. HALL, Brocton, N. Y.
         " J. FRANK SCOTT, Portland, N. Y.

" CODICIL.

" In the tenth section of this, my last will, I desire it should read, ' All of the residue of my estate, both real and personal, I desire to be divided among my living sons at the time of my death.' Anything in this will to the contrary notwithstanding.

" Dated at PORTLAND, N. Y., *January* 22d, 1892.

".VOLKERT X̅ HARDENBURG.  [L. S.]<br>
mark

" RALPH A. HALL, Brocton, N. Y.<br>
" J. FRANK SCOTT, Portland, N. Y."

Before any of the signatures were attached the scrivener asked the deceased whom he wished for the other witness to the will, and he said, Mr. J. Frank Scott, who lived across the road from the deceased and was well acquainted with him. Scott immediately came. Hall testified that the " codicil " was written in the presence of the testator and, as he thinks, after Scott arrived. Scott testified that he thought Mr. Hall had just finished writing it after he had stepped into the room, but he heard Hall mention the word codicil; that Hall said he had drawn the will with a typewriter and the deceased wanted to make a change, so he had added a codicil with a pen. The attesting clause was read over by the scrivener in the presence of the deceased and Scott. Hall asked the deceased to sign the will, and he said he could not see very well, and asked Hall to sign it for him and witness it. Hall asked deceased in the presence of Scott if that (referring to the paper) was his last will and testament, and he said it was. He then asked the deceased the same question about the " codicil." Hall testified : " I asked him (deceased) if the codicil as I read it to him was as he wanted it, and he said it was. I asked him if he declared that to be his last will and testament and he said he did. We (Scott and Hall) witnessed it. He asked us to witness it for him, both instruments. I asked him in reference to both instruments. We both subscribed our names as witnesses to both the will and the codicil in his presence and in the presence of each other. At the time of the execution of this will and codicil I considered him of sound mind and memory, and of full age. He was upwards of ninety. He did not appear to be under any restraint."

The witness again says : "I asked him (the deceased) if it was his last will· and testament. Also the codicil. I think I might have said this instrument is your last will and testament, also the codicil. I signed it as a witness. Mr. Scott signed it as a witness, both in the body of the will and the 'codicil' at that time. Both instruments were executed in my presence and Mr. Scott's presence, and in the presence of Mr. Hardenburg, and signed by both of us at that time. * * * I say distinctly, call his attention to the will and the 'codicil' both at the one time. They were both signed right along in connection."

Witness Scott says: "I went in there where Mr. Hardenburg and Mr. Hall were. They had this paper there at that time. Mr. Volkert Hardenburg signed this paper there at that time in my presence. That is, he signed the mark, the cross, in my presence and in the presence of Mr. Hall. He signed the will there. Mr. Hall asked him if this instrument was his last will and testament, and he said it was. He asked me to sign as a witness. He also signed the codicil in my presence and in the presence of Mr. Hall. Mr. Hall did not say anything about that. Mr. Hall said that he had written it with a typewriter, and he wanted to make a little change and he added it with a pen, so we would have to sign in two places and Mr. Hardenburg put his hand on the pen, and Mr. Hall wrote his name in both places. Both signatures were made at the same time if I remember right, and after that he declared it to be his last will and testament. * * * I signed in both places, same as Mr. Hardenburg did. That's my signature and that is my signature, both places. At that time he appeared to be of sound mind and memory, of full age and under no restraints."

No other witnesses were examined except the subscribing witnesses, Hall and Scott.

The three persons were alone in the room ; the evidence is that the testator fully understood, as did the witnesses, the whole transaction. While he was somewhat deaf, and it was difficult for him to see, he was made to understand, and did understand, all that occurred. He knew that the "codicil" simply carried out his instructions as to the change in the tenth clause, and that that was the purpose of the "codicil" was fully understood by the witnesses.

The will and "codicil" were admitted to probate by the surrogate

by the consent of all the parties interested in the will on the 11th of April, 1892. In July afterwards the daughter, who had consented to the probate, filed a petition for the revocation of the probate of the will, and such proceedings were had thereon that in June, 1893, the surrogate decreed that the probate of the codicil should be revoked, and that the probate of the other portion of the will sustained, so that the will, by his decree, is valid, all except the alteration by the codicil.

The evidence above referred to was given upon the proceedings to revoke, and the surrogate based his conclusion upon what he claimed a want of evidence to show a due publication of the "codicil."

In the findings which he makes and that appear in the case before us (being Nos. 11 to 15 inclusive), he finds that the deceased, in the presence of Hall and Scott, signed the will produced in evidence by making his mark. That in the same presence he signed the "codicil" of the will by making his mark. That he told Hall that he could not see very well, and asked him to write his (the deceased's) name. That Hall, in the presence of the deceased and Scott, signed the name of the deceased to the will and "codicil" at the places where the deceased had made his mark to the will and "codicil." That Hall, in the presence of Scott, asked the deceased if that was his last will and testament, and the deceased said it was. That Hall wrote the "codicil" in the presence of the deceased. That deceased told Hall that he desired to change the tenth clause so that it should read the "living sons," instead of the "living children." And he also found the facts as to preparing the will and its being read over to the deceased as above stated. The surrogate refused to find that the deceased requested the witnesses to execute the "codicil" as witnesses, or that he declared the "codicil" to be his last will and testament, and for the want of the proof, as the surrogate claims, he rejected the "codicil."

A careful examination of the evidence taken before the surrogate, together with the findings which he makes, leaves it clearly established that the statutory requirements in the execution of the will were complied with in substance and effect. There was no evidence to show that the testator was under restraint, or was in any manner influenced in making the will, or that he had not sufficient mind to

make a valid will. While the paper is apparently divided in the will and "codicil," it was really all one paper, executed at the same time, and to be taken together as one transaction.

The purpose of the "codicil" is undisputed. It was simply to correct the tenth clause of the will. This might have been done by interlining the change of "living sons" for "living children," and if done before execution, would have been valid. (*Matter of Tonnele*, 5 N. Y. Leg. Obs. 254.)

The scrivener, however, thought he must make this change in a separate instrument, which he did and called it a "codicil." It referred to the change made in the principal paper, and, but for the requirement of the statute that the testator should sign at the end of the will, would have been a valid portion thereof, the same as if written in the tenth clause itself.

It was not, therefore, in a proper sense, a "codicil," but the statutory exaction was avoided by the testator and the witnesses signing at the end of this paper as well as the other, and the reading of the attestation clause in the presence of the witnesses. And the declaration of the deceased, after he had executed the paper by signing his name twice, that it was his last will and testament, and his request to the witnesses to sign it, was a declaration as to the whole instrument and also a request as to the same, as it was all one transaction, and, therefore, it was unnecessary to make a special declaration as to each signature, although the testimony is that that was done. The failure of the witness Scott to remember as fully what was said in regard to the "codicil" as Hall, who drew the paper, does not disprove the fact testified to by him. (*Rugg* v. *Rugg*, 83 N. Y. 592.)

And while the Code (§ 2618) requires that at least two of the subscribing witnesses shall be produced and examined, yet it is not necessary that both witnesses should state all the material facts required by the statute. (*In re Graham's Will*, 9 N. Y. Supp. 122, and cases there cited.)

The fact that the testator was fully apprised of the testamentary character of the instrument may be considered in aid of proofs tending to establish the publication. (*Gilbert* v. *Knox*, 52 N. Y. 125.)

The testator not only understood this, but the witnesses did at

the time of the publication, and that the object of the "codicil" was to effect the change desired by the deceased in the instrument.

Any act of a testator in the presence of the witnesses at the time of the execution of the will, that tends to show that he desires to publish the paper as his will, and that he wishes the witnesses to execute it, may be considered, and *In re Perego's Will* (20 N. Y. Supp. 394) Judge DWIGHT says: "A man is not to be denied the right to make a testamentary disposition of his property on account of defect of speech and hearing, and a deaf and dumb man may make a will if only the formalities prescribed by the statute are observed in their spirit and intent in such manner as is practicable under the condition existing." And in *Thompson* v. *Seastedt* (6 T. & C. 80; affd. in Court of Appeals, *sub. nom. Thompson* v. *Stevens*, 62 N. Y. 634) Judge DANIELS says: "Although she (testatrix) did not, according to the testimony which was given, in words declare the instrument to be her will, it is clear that she treated it and designed the witnesses to understand it to be such. That was equivalent to such a declaration, and sufficient to satisfy the requirement of the statute upon the subject; for that does not, necessarily, contemplate such a declaration in words, in order to render the instrument valid as a will."

This doctrine is sustained in a long line of cases under many different circumstances, some of which are as follows: *Lane* v. *Lane* (95 N. Y. 494); *Reeve* v. *Crosby* (3 Redf. Surr. 74); *In the Matter of the Revocation of the Probate of the Last Will and Testament of Ann Voorhis, Deceased* (125 N. Y. 765); *Darling* v. *Arthur* (22 Hun, 84); *Matter of Cottrell* (95 N. Y. 329); *Rugg* v. *Rugg* (*supra*); *Matter of the Will of Bernsee* (141 N. Y. 389); *Matter of Hunt* (110 id. 278); and in that case, at page 281, the court says: "This will must have been presented to the witnesses by the testator for them to sign, and such an act was equivalent to a communication by him that he intended to give effect to the paper as his will. If the paper was signed in the presence of the witnesses the act was a sufficient compliance with the statute as to acknowledgment of the subscription."

The request to sign is sufficient if made by the person superintending the execution of the will in the hearing of the testator and with his silent permission and approval. (*Matter of Nelson*, 141 N. Y. 157, and cases cited.)

The effect of the surrogate's action in striking out the codicil is to defeat the purpose and intention of the testator, establish a will not made by the testator, and it should not be permitted. The proof before the surrogate required him to admit this will to probate as an entirety, and while the Code (§ 2622) imposes upon the surrogate the duty of being "satisfied of the genuineness of the will and the validity of its execution," still he must be so satisfied when the proof, taken together, establishes what the statute requires, and this court has the power, under section 2586, to decide the question of fact which the surrogate had before him. There being no substantial conflict in the evidence as to the fact of the execution of this will this court should direct that the original probate of this will should be confirmed. (*In re Rapplee's Will*, 21 N. Y. Supp. 801 ; *Matter of Hunt*, 110 N. Y. 278.)

The decree of the surrogate of Chautauqua county, appealed from, should be reversed, and the original probate of this will and " codicil " confirmed, with costs to the appellants payable out of the property of the deceased.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Decree of surrogate reversed and the original probate of will and codicil confirmed, with costs to the appellants payable out of the estate.