B.. FRANK PERHAM, Individually, etc., Plaintiff, *v.*
JENNIE W. COTTLE et al., Defendants.

(Supreme Court, Chautauqua Special Term, December, 1916.)

Verdict — jury — when verdict set aside — actions — wills — evidence —
trial — Code Civ. Pro. § 2653a.

Where two or more propositions are submitted to a jury
in one question and the verdict is general, it will be set aside
if the evidence is insufficient as to either of the questions, or
if error is committed in connection with the submission of
either question, as in such case it is impossible to determine
on which of the questions submitted the jury base · their
verdict.

In an action brought under section 2653a of the Code of
Civil Procedure to determine the validity of a last will and
testament which had been duly probated, plaintiff confined his
proof solely to the question of testamentary capacity and then
rested. The questions of testamentary capacity, whether testa-
trix at the time of the execution of the paper declared it to be
her will and testament and whether or not she requested the
subscribing witnesses to sign it as such, were not specifically
and separately submitted to the jury, but the court, in sub-
mitting the general question " Is the paper writing produced
the last will and testament of the testatrix " said " Your
answer to that question will be yes or no. If * * * it
was not executed in the manner required by law, then your
answer will be no. .If the testatrix did not possess sufficient
. mental capacity then your ‘answer will be no. If, on the
.other hand, you find it was executed in the manner required
by law, and that the deceased possessed sufficient mental
capacity. within the rule that has been stated, then your answer
will be yes to this question." The verdict of the jury in the
.form of an answer to the question submitted ‘was " No."
*Held,* that had the several questions been submitted separately
the verdict would not be disturbed if the finding was warranted
as to either one of the questions.

That as under the undisputed evidence it must be held as
matter of law that the testatrix had declared the instrument
to be her last will and testament, and had requested the sub-

scribing witnesses to sign it as such, it was error to submit to the jury the questions of the publication and request to the witnesses as questions of fact, and the verdict should be set aside and a new trial granted.

Motion for new trial on the minutes of the court.

William S. Stearns, for plaintiff.

Edmund P. Cottle and Marion W. Cottle, for defendants.

Cole, J. A motion for a new trial is made upon the minutes by virtue of the provisions of section 999 of the Code of Civil Procedure, upon a verdict in favor of the plaintiff establishing the invalidity of the will in controversy. The deceased, Jennie C. Miller, died at the age of seventy-seven years at Fredonia in Chautauqua county, in December, 1912, leaving a last will and testament, dated March 9, 1909. By the provisions of the will, after making certain small bequests to Marion W. Cottle and Jennie Williams Cottle, she gave the residue of her estate to Octavius O. Cottle for life, and after his death to Jennie Williams Cottle, a niece. The residuary bequest was subject to an annuity of $300 to be paid to her sister Henrietta Perham. She nominated Octavius O. Cottle and Jennie Williams Cottle as executors. Her estate is estimated at between $40,-000 and $50,000, consisting principally of real property in the village of Fredonia. She had been twice married, but left no descendants. Octavius O. Cottle died in February preceding her decease, and her heirs which she left surviving her were a sister, Henrietta Perham, nearly eighty years of age, and the descendants of Octavius O. Cottle, among whom were Jennie Williams Cottle and Marion Weston Cottle. In Feb-

4.

ruary next following the decease of the testatrix the will was admitted to probate in the Surrogate's Court at Chautauqua county without opposition. Thereafter the sister Henrietta Perham commenced this action by virtue of the provisions of section 2653a (since repealed) of the Code of Civil Procedure, praying judgment that the invalidity of the will be determined. After the commencement of the action Henrietta Perham died intestate leaving heirs, among whom is the plaintiff, B. Frank Perham. By an order of this court he was substituted as plaintiff and the action was continued in his name. The complaint alleges as grounds for the relief prayed for:

*First.* That the will was not executed in conformity to the requirements of the Statute of Wills.

*Second.* The testamentary incapacity of the deceased; and

*Third.* Undue influence practiced upon the deceased.

Upon the trial no proof was given tending to show any undue influence and that claim was abandoned.

Proof was given which the plaintiff asserts tended to show want of testamentary capacity. Proof was also given from which the plaintiff contends that a question of fact arose as to whether or not the testatrix at the time of the execution of the will declared the instrument to be her last will and testament, and as to whether she requested the witnesses to sign the will. The court submitted to the jury as questions of fact:

*First.* Whether at the time of the execution of the will the testatrix declared the instrument to be her last will and testament, and whether or not she requested the witnesses to sign; and

*Second.* The question of the testamentary capacity of the deceased.

These questions were not submitted specifically and separately, but the general question submitted to the

jury was, " Is the paper writing produced the last will and testament of the testatrix Jennie C. Miller? " and in that connection the court stated: " Your answer to that question will be yes or no. If, as already stated, it was not executed in the manner required by law, then your answer will be no. If the testatrix did not possess sufficient mental capacity then your answer will be no. If, on the other hand, you find that it was executed in the manner required by law, *and* that the deceased possessed sufficient mental capacity within the rule that has been stated, then your answer will be yes to this question."

The verdict of the jury was in the form of an answer to the question submitted and was " No."

Had these several questions been submitted separately the verdict would not be disturbed if the finding was warranted *as to either one* of the questions submitted, although it may be unwarranted as to the other. *Miller* v. *Miller,* 150 App. Div. 604.

But where two or more propositions are submitted in one question, and the verdict is general, it should be set aside if the evidence is insufficient, as to either of the questions, or if error is committed in connection with the submission of either of the questions, for in such case it is impossible to determine on which of the questions submitted the jury based their verdict. *Buchanan* v. *Belsey,* 65 App. Div. 58; *Rosenstock* v. *Metzger,* 136 id. 620; *Seaman* v. *McLaury,* 142 id. 554; *Pettit* v. *Pettit,* 149 id. 485–488.

*First.* Upon the question of due publication: The witnesses to the will were Selden E. Stone and Lester N. Allen. At the time of the execution of the will Stone was manager and Allen was clerk of the Columbia Hotel in Fredonia. Both were sworn as witnesses upon the probate of the will before the surrogate, but before the trial of this action Stone died. The testa-

trix resided at Fredonia and for sometime prior, as
well as subsequent, to the date of the will, was accus-
tomed to come to the hotel for her dinner at noon.
Stone and Allen each made and signed the usual
formal affidavit before the surrogate, wherein it is
stated, among other things, '' that the said decedent
did at the time of subscribing her name as aforesaid
at the end of the said instrument, declare the said
instrument so subscribed and now exhibited to be her
last will and testament.'' Stone and Allen were also
each sworn as witnesses and questioned by counsel
representing some of the parties who are contestants
in this action. Stone on that occasion testified that
Mrs. Miller came in to dinner, came up to the desk
'' and asked me to witness her signature.'' That she
had the will with her; that the testatrix, Allen and
himself, all went into the reading-room and she signed
it there in the presence of each of the witnesses.
'' Q. Did you then examine the will at all? A. No, sir.
Q. Did you know anything of its contents? A. No, sir.
Q. Did she have any conversation with you as to the
contents of this will or anything of that kind? A. No,
sir. Q. Discuss the will any? A. No, sir. Q. Simply
said she wanted you to witness her signature, you and
Mr. Allen, in the reading room? A. That is all. Q. Did
she at that time say this was her will? A. Yes, sir.''

Allen was also sworn and examined as a witness
before the surrogate by the same counsel, and on that
occasion he testified that he was employed as day clerk
in the Columbia Hotel, and '' Q. Do you recall the
circumstances attending the execution of this will?
A. Yes, sir. Q. Just state your recollection of the
transaction? A. Mrs. Miller spoke to Mr. Stone first
and he spoke to me. That is the first I heard, and
Mr. Stone said ' Come into the reading room ' and we
went in there and signed it. Q. Did Mrs. Miller ask

you to sign this? A. Yes, sir. Q. She herself? A. Yes, she herself. Q. Did she say whether or not it was her will? A. I think she did. I don't just remember * * * Q. Did you see her sign this? A. Yes, sir. Q. Did you sign it in Mr. Stone's presence? A. Yes, sir. Q. And did he sign it in your presence? A. Yes, sir. Q. Was Mrs. Miller present when you both signed it? A. Yes, sir. Q. You say she did say it was her will? A. I say I don't remember. I suppose she did. I would not say that she did, because I don't remember * * * Q. She had this paper all written out when she came in? A. It was all written out the paper that she had. Q. Did she discuss the will in any way? A. Never said a word as to that. She wanted us to sign, that is all.''

Allen's testimony before the surrogate was introduced on the trial of this action without objection.

Upon the trial the defendant, following the usual course outlined by section 2653a, introduced the decree and probate proceedings and rested. The plaintiff confined his proof solely to the question of testamentary capacity, and then rested. Up to this time the due execution and publication of the will had not been questioned, and the decree by force of the statute itself established *prima facie* the due execution of the will. The defendant then in rebuttal called Allen as a witness and examined him concerning the circumstances attending the execution of the will, for the purpose of showing the testamentary capacity of the deceased, and in that connection he testified as follows: '' I was back of the desk about noon. Mrs. Miller come in and she walked over and put her coat and hat on the rack and asked Mr. Stone if he would sign her will for her as a witness. And Mr. Stone came over to me and said ' Mrs. Miller wants you to sign her will for her

as a witness to her will ' and we went from the office into the writing room and signed it.''

On his cross-examination he said that the will was not read over and that she did not state what was in it, nor write anything except her signature.

'' Q. She came in there with it all prepared? A. She did. Q. And she asked you or Mr. Stone to come in and witness her will? A. She asked Mr. Stone and he came over and he asked me and we went in there together. Q. And then you went into the writing room there did you? A. Yes, sir. Q. And she wrote her name on this piece of paper? A. Yes, sir. Q. And you wrote yours and Mr. Stone wrote his? A. Yes, sir. Q. And that is all there was to it? A. Yes, sir. Q. *Do you remember whether she said it was her will or not?* A. No, sir, I do not. Q. *You do not remember whether she declared it to be her will?* A. *She did not to me.* Q. She just had this paper and wanted to get your name on it? A. No, Mr. Stone told me that she had this, but she did tell me. He told me Mrs. Miller wanted us to witness her will, but she did not say it herself.''

On his redirect examination he testified as follows: '' Q. You followed Mr. Stone's directions? A. Well, in a way yes, and in a way no. Mr. Stone had signed wills before and that happened to be the first one I had ever signed.''

It is apparent from Allen's testimony that when the testatrix came up to the desk and told Stone that she wanted him to witness her *will*, that this request was made in Allen's presence and hearing, and that he heard it, although the testatrix's conversation in that instance was directed to Stone, for *Allen* says that he was behind the desk, and *Stone* also testified that *he* was at the desk, and Stone says she came up to him. Allen testified positively that she requested Stone, and

then says that Stone (not the testatrix) at that time stepped over to him, evidently behind another part of the desk, and said that the testatrix wanted him to witness her will. All three immediately went into the writing-room together. She then produced her will, signed it herself and they signed as witnesses, each adding his residence, Allen adding his residence at the suggestion of Stone, who was familiar with the formalities connected with the execution of wills. The will was in fact drawn upon the usual blank form. The written part was entirely in the handwriting of the testatrix. At the head and above in large capital letters were the words "Last will and testament." The indorsement contained in very large black letters the word "Will." The attestation clause was full and complete, and in the blank spaces therein provided the date was written, and in two blank spaces the word "her" was written, in the handwriting of the testatrix.

The statute (Decedent Estate Law, § 21, subd. 3) provides that the testator at the time of making such subscription, or at the time of acknowledging the same, "shall declare the instrument so subscribed, to be his last will and testament."

It has been repeatedly held that this statute does not require a literal adherence to its own words and phrases. A substantial compliance with its terms is all that is required.

It is sufficient if the testator in some manner communicates to the witnesses the fact that the paper which he is signing and which they are requested to witness is understood and intended by him to be his will.

The information need not consist of an oral assertion. It may be made known to the witnesses by all the circumstances attending the acts, and by the acts

.Supreme Court, December, 1916.        [Vol. 98.

and conduct of the testator. *Matter of Beckett*, 103 N. Y. 167; *Matter of Hunt*, 110 id. 278; *Lane* v. *Lane*, 95 id. 494; *Matter of Kindberg*, 141 App. Div. 188; *Matter of Balmorth*, 133 id. 521; *Matter of Forman*, 54 Barb. 274.

While the requirement is none the less binding in the case of holographic wills, yet the scrutiny required in such cases is relaxed. *Matter of Beckett*, 103 N. Y. 167; *Matter of Turell*, 166 id. 337.

And it is not necessary that the declaration should be made in the very act of signing. It is sufficient if the acts be done on one occasion and form parts of the same transaction. *Matter of Collins*, 5 Redf. 20; *Jackson* v. *Jackson*, 39 N. Y. 153.

In *Matter of Hunt*, 110 N. Y. 278, Judge Gray, writing the opinion of the court, at page 281, says: "This will must have been presented to the witnesses by the testator for them to sign, and such an act was equivalent to a communication by him that he intended to give effect to the paper as his will."

In the case at bar, without dispute, the deceased came to the desk of the Columbia Hotel and in the presence of Allen requested Stone to witness her "will." She had already prepared the attestation clause for *two* witnesses. She and Stone and Allen immediately, *and as a part of the same transaction*, stepped to the reading-room where she produced this will in her own handwriting, bearing, as already stated, the head lines and indorsement showing what it was, and there signed the paper and requested each of the witnesses to sign.

Allen says in his testimony on this trial, relating to the act of the execution of the will: "Q. And you recognized that paper as a will? That is what you were there for to sign a will? A. I knew it was that."

Under all the authorities I am of the opinion that, as a matter of law, under the undisputed evidence, the

testatrix *declared* the instrument to be her will within the meaning of the requirement of the statute.

I am equally certain that, as a matter of law, under the undisputed evidence, the witnesses were requested to sign within the meaning of the statute. The deceased conveyed the request to Stone in the presence of Allen at the clerk's desk; the three went into the room and what occurred there, as already stated and as narrated by all the witnesses, including Allen, upon this trial, establish a request to sign as witnesses. It is settled by abundant authority that this request need not be in express language, but may be implied from the circumstances. *Coffin* v. *Coffin,* 23 N. Y. 9; *Thompson* v. *Stevens,* 62 id. 634; *Matter of Hardenburg,* 85 Hun, 580.

If I am right in these conclusions it was error to submit to the jury the questions of the publication and request to witness as questions of fact.

Under the authorities cited I am unable to discover even a scintilla of evidence that the witnesses were not requested to sign as such. But upon the other fact — of the testator's " declaration " — if it be true that there was " some evidence " of the failure to comply with this requirement, yet, in my opinion, the verdict in that respect is so contrary to the evidence that justice requires that it should not stand. Doubtless, if there is any evidence to support the finding, it was the duty of the court to submit the matter to the jury, but it does not follow that because it was the duty of the court to submit the question to the jury, the verdict should be permitted to stand. *Pierce* v. *Metropolitan St. R. Co.,* 21 App. Div. 427; *Mulligan* v. *N. Y. C. & H. R. R. R. Co.,* 11 N. Y. Supp. 452; *Ludeman* v. *Third Ave. R. R Co.,* 30 App. Div. 520.

The only evidence against due publication is to be found in Allen's testimony, wherein he says that he

*does not remember whether or not* she *said* that it was her will in the room where the paper was executed, but what he does say positively is that she did not " *declare* " it to be her will. Allen was apparently truthful and there is no occasion to doubt his honesty. As already stated, it was a sufficient *declaration* if she *said* it was her will. Leaving out of consideration what had just occurred at the desk only a moment before, we have, then, a holographic will with an attestation clause full and complete, with the blanks filled out, indicating that the testatrix knew what formalities were required. One of the witnesses (Stone) was familiar with the execution of wills. And this witness says that *at the time*, in the room where the will was executed, she said it was her will. The other witness does not remember whether or not she said so at that precise time.

Under these circumstances the will should be admitted to probate and a finding to the contrary should not be permitted to stand. *Matter of Cottrell,* 95 N. Y. 338; *Matter of Sizer,* 129 App. Div. 7; *Matter of Abel,* 136 id. 788–792.

In this connection it becomes important to consider the charge of the court upon this subject. After calling attention to the provisions of the statute and the evidence upon the subject the court stated: " The question, however, as to whether or not Mrs. Miller declared that instrument to be her last will and testament I leave to you as a question of fact for you to determine in this case, in view of the testimony of Mr. Allen here, who gives apparently his best recollection that she did not declare it to be her last will and testament * * * She must have declared it to be her last will and testament, in some manner, in response to a question, or voluntarily, or by characterizing it as her last will. In some manner she must

have declared it to be, and must have acknowledged it to be, her last will and testament, as that is an essential pre-requisite to the execution of a valid will under the statute of this state.''

And further on, in submitting the general question, the court again stated: '' This involves as already stated a determination by you of two questions, (1st) That the statutory formalities were complied with. That is, was the will executed at the hotel in the way that the law required? And in this case did she declare it to be her last will and testament and did she request the witnesses to sign it? If she did not declare this instrument to be her last will and testament then it is not a valid will.''

The statement of the rule was literally correct, but altogether too restricted as applied to the facts in this case. The proposition should have been stated to the jury, and in concrete form, that if, under the facts in this case, she *in any manner communicated* to the witnesses the information that the paper which she requested them to sign as witnesses was her will, then such information so communicated constituted a '' declaration '' within the meaning of the law.

The emphasis that was laid upon the word '' declare '' only served to emphasize to the jurors the necessity of a compliance with the *words and phrases* of the statute, rather than with its purpose.

The defendant's counsel made the following requests: '' I ask the court to charge the jury that it is enough to convey to the witnesses to the will the testator's knowledge of and intention to execute a will. The Court: Yes, I will so charge. Mr. Cottle: I think the court charged substantially, yet I am not quite sure that even a sign or an act is a sufficient declaration, or

request to the witnesses to execute the will.    The Court: Yes, I did, and if I did not, I do now.''

It is doubtful if this sufficiently conveyed to the minds of the jury the true principle in view of the emphasis already laid upon the necessity of a *declaration.*

It is also to be borne in mind that by the terms of the statute under which this action is brought (Code Civ. Pro. § 2653a) '' The decree of the surrogate admitting the will or codicil to probate shall be *prima facie* evidence of the due attestation, execution and validity of such will or codicil.''    See, also, *Ivison* v. *Ivison,* 80 App. Div. 599; *Pettit* v. *Pettit,* 149 id. 485; *Primmer* v. *Primmer,* 166 id. 402.

I am not unmindful of the fact that verdicts of juries, where there is some evidence to support them, should not be lightly disturbed.

It has been stated that such motions '' are not governed by any well defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end.''    *Barrett* v. *Third Avenue R. R. Co.,* 45 N. Y. 628–632; *Oberlie* v. *Bushwick Ave. R. Co.,* 6 N. Y. St. Repr. 771.

It is not true that the verdict of a jury should not be set aside merely because there is '' some evidence '' or a '' scintilla of evidence.''    *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341–359.    See, also, dissenting opinion of Justice McLaughlin in *New York & Queens Co. R. Co.,* 73 App. Div. 308.

Where, however, the evidence is so far contrary to the overwhelming preponderance of the evidence as to indicate that the jury must have been influenced by

passion, prejudice, partiality, corruption or *mistake;* or that they failed to *give proper consideration to the evidence through misapprehension as to its effect;* and where it is clear to the court that injustice has been done, it is the duty of the court to set aside the verdict. *Townsend Manfg. Co.* v. *Foster,* 51 Barb. 346–350; *Trotcky* v. *Forty-second & Grand St. F. R. R. Co.,* 73 Hun 26; *Schmidt* v. *Brown,* 80 id. 183; *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341–359; *Berkowitz* v. *Consolidated Gas Co.,* 134 App. Div. 389–391.

In view of the conclusion which I have reached as to the error in submitting to the jury the question of publication of the will, and of request to witnesses, it is unnecessary to consider whether or not the verdict was against the weight of evidence upon the other question, to wit, the mental capacity of the testatrix, although that question is very seriously urged by the defendant, and is certainly entitled to grave consideration.

The verdict should be set aside and a new trial granted, with ten dollars costs to the defendant, and an order to that effect may be entered.

Ordered accordingly.